MILLER, Judge.
On March 10, 1967, Mrs. Lola R. Sattler was involved in an automobile accident at the intersection of Sixth and Hodges Streets in Lake Charles, Louisiana, while riding as a guest passenger in an automobile owned by her husband, but being driven by her minor son, Herman Sattler, Jr. The Sattler vehicle, a 1963 Rambler Station-wagon, was struck by a 1960 Chevrolet Sedan, owned and operated by Mrs. Elaine W. Arnold.
Mrs. Sattler brought suit against Mrs. Arnold and her insurer, Gulf Insurance Company, and alternatively against her own liability insurer, Allstate Insurance Company. The case was tried before a jury, and the jury rendered a special verdict absolving Mrs. Arnold from negligence and awarding Mrs. Sattler the sum of $10,000.00 against her own insurer, Allstate Insurance Company, holding that the negligence of her son was the sole proximate cause of the accident.
Allstate Insurance Company perfected a suspensive appeal. The only issue concerns Allstate’s complaint that the award to Mrs.
*55 Sattler was grossly excessive, We agree that it was.
At the time of the January 27th and 28th, 1969 trial, Mrs. Sattler appeared before the jury needing two canes to help her walk. The jury undoubtedly concluded that the accident in some measure contributed to this disability, but the evidence does not support this conclusion.
The record only supports the finding that plaintiff sustained a fracture of the left fourth rib from which she recovered in three to six weks, together with minor complaints relating to her hip. Although she did complain of hip pain following the accident, she did not seek medical help from March 16, 1967 until June 3, 1968.[1] Furthermore, she admitted that she was able to walk until June or July of 1967, but testified that she had to use a cane to walk since that time. Her son was not sure when she started to use the cane. If plaintiff was unable to walk without a cane from June or July of 1967, it is difficult to understand why she did not seek medical treatment until June 3, 1968 when she consulted and started taking treatments from Dr. Carl E. Warden, Osteopathic Physician. In this connection, we note that Mrs. Sattler was aware of the necessity of having medical testimony to substantiate her complaints, for she had previously filed suits for personal injuries. One sought damages for a whiplash injury resulting from an automobile collision which occurred two years before this accident. Another sought damages resulting from a slip and fall accident which occurred in a grocery supermarket approximately twelve years before this accident.
To establish that her disability was related to injuries received in the accident, plaintiff relied on her family physician Dr. K. Perego and Dr. Warden. Defendant Allstate called as its witness, Dr. Eli Sor-kow, general practitioner of Lake Charles, whom plaintiff had consulted on May 30, 1967 and also in October of 1956 and May of 1955. Defendant Gulf Insurance Company, called as its witness Dr. Norman P. Morin, orthopedic surgeon of Lake Charles, who examined plaintiff at the request of Gulf Insurance, on October 3, 1968.
Mrs. Sattler was riding in the right front seat when the right front corner of Mrs. Arnold’s Chevrolet struck the center of the left front door of the Rambler. Mrs. Sattler testified that this caused her son to be “jammed up against” her, and caused her to feel “numb”.
She and her son got out of the car by way of the right front door and walked around without any difficulty. The investigating officer estimated damages of $100 to the Chevrolet and $300 to the Rambler, and noted that Mrs. Sattler was less disabled than the other occupants of the two vehicles. After the investigation, both Mrs. Sattler and her son rode home in the wrecker that towed their car from the accident. When she arrived at her home she “laid down.” She testified that she went to see her family physician, Dr. K. Perego, the next day or three days later, but actually it was four days later when she first visted Dr. Perego. (Tr. 129, 170) She testified that she had two broken ribs, but Dr. Perego testified that she had one fractured rib, the fourth anterior rib. She indicated in her testimony that she “went to him (Dr. Perego) as long as he was here (in Lake Charles).” But Dr. Perego testified that he saw Mrs. Sat-tler on only two occasions, March 14 and 16, 1967; and that he moved his office to Vinton, Louisiana in April, 1967.
Dr. Perego testified that Mrs. Sattler’s complaints were “soreness in her left shoulder and pain in her left anterior chest and also pain in her left hip.” All affected areas were x-rayed and he found “a fracture of the fourth anterior rib.” He expected a complete recovery in three to five weeks. He found nothing serious about her injuries.
The x-rays of her left hip taken March 14, 1967 were read to show “no recent fracture, dislocation. Old degenerative changes, *56 presently narrowing of the joint space and minimal lateral subluxatinn of the head. These changes are of long-standing.”
While Dr. Perego answered yes to plaintiff counsel’s question as to whether the old degenerative arthritic changes in her hip area were aggravated and made symptomatic by the trauma, he also testified unequivocally on cross examination that he expected her to make a full recovery from all injuries in three to five weeks. Furthermore, when informed that Mrs. Sattler was able to carry on her normal activities until June or July following the accident, he agreed with defense counsel’s suggestion that it would be impossible to say just what brought on Mrs. Sattler’s present disability. (Tr. 178, 9).
According to plaintiff, her hip hurt following the accident, but she did not have difficulty walking until June or July of 1967 when she started using a cane. On direct examination, she testified: (Tr. 139)
“Q. Did you have anything to assist you with walking during the period from the accident until June 1967 when you commenced to use walking sticks?
“A. Oh, np, I could walk as good as anybody, or squat down and put out plants. And that, I can’t even get in the bath tub; I can’t do anything like that.
“Q. Was that after the accident or before the accident, that you could walk?
“A. I could walk after the accident until between June and July 1967.
“Q. Did you, from the date of the accident, until June, did you use anything to help you walk then?
“A. No, sir.”
She denied previous difficulty with her hip, and testified that she consulted Dr. Sorkow on May 30, 1967 for a cancer checkup. She later testified that she took a complete checkup, but did not think that she mentioned anything to Dr. Sorkow about her injuries; that she didn’t ask him because “he’s not a bone specialist and I knew it took a bone specialist.” (Tr. 149).
Dr. Eli Sorkow testified that Mrs. Sattler was seen on May 30, 1967 when “she stated that she wanted a routine physical examination.” She complained of trouble with walking because her muscles felt tight; she had aching in her hips and in the legs; but she didn’t connect this with either the accident of a few months back or the one about two years prior to that. Dr. Sorkow related her complaints to arthritis, and found them consistent with her complaints and diagnosis made in May of 1955 and October of 1956.
When Dr. Warden first saw plaintiff on June 3, 1968, his “initial diagnosis, without x-rays, was possible fracture of the hip or aseptic necrosis of the hip, which would, in plain words, mean irritation of the hip bone without infection.” (Tr. 185). He referred her to Drs. Warshaw and Cavin for x-ray studies and after receiving their report changed his diagnosis to “osteoporosis, meaning bone softening and arthritis.” (Tr. 185). Dr. Warden would not give an opinion as to whether or not plaintiff’s disability was aggravated by the March 10, 1967 accident.
Dr. Morin was of the opinion that the accident did not aggravate plaintiff’s arthritis, but did cause a “flare-up”. He explained: (Tr. 251) “Now there’s a difference between an aggravation and a flareup. An aggravation you mean that an injury will make an arthritic process so many degrees worse. When you say a flare-up, you mean that as a result of this injury that hip joint or whatever joint is involved, becomes painful, irritated. But that this injury itself will not make it so many degrees worse. I felt she’d had a flare-up as a result of this injury. Then I felt, taking everything into account, that she may well have been disabled as a result of an arthritic flare-up resulting from this injury from eight to ten months. She presently *57 ■undoubtedly enjoys the same relative ease and comfort experienced prior to this injury, plus what could be accounted for hy a normal progression of the disease process over a period of some eighteen months.”
Dr. Morin later explained (Tr. 253) “Had she irritated the hip severely with this accident she would not have been able to carry on with her household activities (until June or July, 1967).” Dr. Morin was of the opinion that plaintiff recovered within three to six weeks after the accident. (Tr. 255).
Plaintiff has failed to establish that her present disability is related to injuries received in the March 10, 1967 accident. Instead it was well established that her disability is a result of arthritis with which she was first diagnosed in May of 1955. The burden is on plaintiff to establish a connection between a disability and the accident. It is not sufficient to show a possible connection, but instead, it must be shown that there was a probable connection. 22 Am.Jur.2d, page 392.
Plaintiff did not have any hospital expenses. She consulted her family physician on only two occasions; first, four days after the accident and last, two days thereafter. Although she filed suit almost a year after the accident, she did not consult a doctor with reference to complaints related to the accident from one week after the accident until fifteen months after the accident. Two and one-half months after the accident she consulted Dr. Sorkow without making serious complaints, and then failed to relate them to the accident.
We conclude that she is entitled to damages for the fracture of the fourth anterior rib which caused pain for about ten days and discomfort for an additional three to five weeks. She is entitled to damages for a “flare-up” of her arthritis which did not interfere with her activities for approximately three months and from which she fully recovered in approximately eight months. The jury award of $10,000 is manifestly excessive and is reduced to $2,000.00.
For these reasons, the judgment appealed from is amended hy decreasing the amount of the award from $10,000.00 to the sum of $2,000.00. In all other respects, and as herein amended, the judgment is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.

. Suit was filed February 29, 1968.