341 So.2d 558 (1976)
Joseph Glenn VIDRINE, Plaintiff-Appellee,
v.
SENTRY INDEMNITY COMPANY et al., Defendants-Appellants.
No. 5676.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1976.
Rehearing Denied January 26, 1977.
Writ Refused March 25, 1977.
Voorhies & Labbe by D. Mark Bienvenu, Lafayette, for defendants-appellants.
Tate & Tate by Donald J. Tate, Mamou, for plaintiff-appellee.
Before HOOD, CULPEPPER, DOMENGEAUX, WATSON and HUMPHRIES, JJ.
HUMPHRIES, Judge.
Defendant-Appellant, Sentry Indemnity Company (Sentry) perfects this appeal from an award to plaintiff-appellee for property damages, loss of wages and medical expenses.
The genesis of this case is an automobile accident on November 10, 1973 in the Town *559 of Mamou, Louisiana. Sentry concedes its liability. The only matter at issue is the quantum.
Prior to the accident the plaintiff was an extremely large man (and still is). His weight was approximately 620 pounds. Because of his extreme obesity it was necessary that the seat of his automobile be moved back 4 to 6 inches in order to permit him to fit into the front seat between the back of the seat and the steering wheel. One doctor in describing his appearance states that the fat hung down to his knees.
For a period of approximately 5 years prior to the accident the plaintiff had been toying with the idea of going to a specialist and having an intestinal by-pass operation. He talked to friends or relatives of his who were doctors. In social conversation, 5 or 6 doctors had told plaintiff that an intestinal by-pass operation would help him lose weight. None of these doctors recommended that he have that operation. Not having examined him, certainly they would not. As a matter of fact none of the doctors who examined or treated the plaintiff after the accident recommended that he have the operation. They recommended that he see a doctor of this specialty first. One doctor gave him the name of an endocrinologist.
The plaintiff is a meat inspector for the State of Louisiana. Outside of getting in and out of his car and driving his vehicle he works in an office and his work is quite sedentary.
In order to determine whether the quantum of this case should be affirmed, increased or reduced, it is necessary to review the medical testimony.
Following the accident, which occurred in front of the Savoy Hospital, the plaintiff was admitted to that hospital and was treated by Dr. Gregory M. Savoy. The plaintiff was in the hospital from the time of the accident at 1:55 P.M. November 10, 1973 until November 13, 1973. Dr. Savoy stated that, after three days in the hospital, plaintiff improved to such an extent that he could be discharged. He said that the X-rays were negative. The plaintiff returned to the hospital on December 31st and remained until January 4, 1974. At this time Dr. Savoy stated that plaintiff said that his neck was alright and he was having no trouble.
At the time that Dr. Savoy saw the plaintiff, following the accident, he found several bruises, mostly over the shoulder and arms and across his chest, which he ascribed to hitting the steering wheel. He found some muscle spasm involving the posterior muscles of the neck, as well as possible lumber spasm. At his second hospitalization, X-rays were within normal limits and Dr. Savoy found no evidence of neurological loss in either extremity. He found that the straight leg raising test was never positive and he felt that this test is probably the primary examination that is used to discover nerve root irritation. Dr. Savoy stated that at no time did he find any objective evidence of any injury sustained by the plaintiff other than bruises. He stated that the only thing the plaintiff had were subjective complaints regarding his neck and his back.
Dr. Savoy stated that he would characterize the plaintiff's weight as "exogenous obesity", or that caused by overeating.
Under cross-examination by the defendant, Dr. Savoy stated that he never was able to actually elicit any objective findings insofar as the low back complaints were concerned. He stated that he treated the man because the man told him that his back hurt.
The plaintiff introduced the deposition of Dr. John R. Jackson, a neurosurgeon of Metairie, Louisiana. Dr. Jackson examined the plaintiff only one time and that was on February 12, 1974. Dr. Jackson did a neurological examination consisting of clinical testing as well as X-rays. X-rays were most difficult to take because of plaintiff's obesity. As a matter of fact some types of X-rays were not possible at all. The X-rays that were taken were of poor quality and called for little reliability. His examination revealed that the plaintiff had a full range of motion of the lumbar and cervical spine *560 in all directions and with no limitation of motion on an anterior flexion. He was able to almost touch his toes but the full maneuver was prevented by his obese abdomen. There were no muscular weaknesses or atrophy noted throughout the examination. The grip in his right hand was 190 pounds and his left hand was 180. The deep tendon reflexes were present. Straight leg raising test caused no pain at 100 degrees bilaterally. The sensory examination suggested decreased sensation of the lateral aspect of the right foot and leg to pinscratch. Otherwise sensation was intact throughout. Dr. Jackson stated that, in short, the neurological examination was essentially normal except for the creased sensation of the lateral foot and leg. He stated that there was a suspicion of narrowing of the inner space between L5 and S1. The Court observes that because of the poor quality of the film, as testified to by the doctor, that the possible X-ray findings cannot be considered because the film was not reliable.
In spite of the lack of findings, Dr. Jackson stated that he suspected a bulging disc that was irritating the S1 nerve root. He stated: "Fortunately, this is no more than an irritation since it is not creating any objective neurological damage." In the same answer, wherein Dr. Jackson stated that he suspected a ruptured disc, he also stated: "It is quite possible that the mere loss of 200 pounds of weight would give him complete relief of his symptoms". It must be observed that Dr. Jackson was not, at any time, giving a definite diagnosis but merely was expressing possibilities that might exist.
The doctor stated, under direct examination, that he could not conclude with reasonable medical certainty that the man had a bulging disc. (Tr. 44).
"Q. . . can you state with reasonable medical certainty that this man probably does have a bulging disc?
A. No, on these findings I can say that I suspect he has a bulging disc and I can't say that he probably does until I prove it with a myleogram."
Dr. Jackson stated that he could not determine whether the "marginal narrowing" of the inner space was caused by the accident. He stated that he found no objective evidence of neurological damage. (Tr. 54).
"Q. Summing up, you didn't really find any objective neurological damage in this patient?
A. That's right."
The plaintiff called these two doctors to testify and is of course bound by their testimony.
The other doctor that examined the plaintiff was Dr. J. Frazer Gaar, a board certified orthopedic surgeon of Opelousas, Louisiana. Dr. Gaar's deposition was taken on behalf of the defendant. Actually the only thing that Dr. Gaar found was that the plaintiff was "grossly obese". He estimated his weight to be in the vicinity of 600 pounds. He didn't have any scales that went up that high. The patient was so heavy that he broke the doctor's examining table and the remainder of the examination had to be done with him standing or sitting in a chair. Dr. Gaar found that the plaintiff had complete extension of his knees without any complaint of back pain. He could forward flex to approximately 45 degrees before he complained of any pain. He did not complain of radiation of pain down his legs with forward extension. The doctor was unable to get any natural reflex action from the patient. He found that the plaintiff had no significant muscular weaknesses or any atrophy. He described plaintiff's reaction to pin prick of both legs as a stocking type of anesthesia or hypothesia. He stated that this had no anatomical basis, and was of no diagnostic value. It should be pointed out that Dr. Jackson found this to be the only symptom that would lead to a diagnosis of a ruptured disc. Plaintiff had good muscle function in both legs. He demonstrated a good range of motion in the neck and there was no muscle spasm noted there. There was no complaint of any tenderness in the cervical or shoulder region. Compression of the head did not cause any complaint or any radiation of pain in the arms. He stated that the plaintiff *561 complained of subjective decrease to pain with pin prick in both little fingers bilaterally. He stated that this had no anatomical basis. He found that the plaintiff had adequate pulses and that he had no sensory loss. He had an adequate range of motion in the shoulders. The doctor was only able to take adequate X-rays of the cervical spine. He could not take X-rays of the lumbar spine because his machine was not strong enough to penetrate the fat. He stated that all of the complaints were subjective and he failed to find any organic pathology and he could not demonstrate any spinal cord compression or nerve root irritation with his examination and limited X-rays.
There was no lay testimony introduced. The medical evidence regarding injury is most meager and certainly will not support a high award of $16,000 as granted by the trial court.
While the plaintiff was testifying, and his testimony was quite brief, he stated that he had been to Houston and had had an intestinal by-pass operation done in July of 1975. The trial was in September of 1975. He stated that since this by-pass operation he had lost about 150 pounds. There is no other proof in the record that this plaintiff had a by-pass operation. He stated that no doctor sent him to have the operation but that he on his own diagnosis and prescription went and had it done. The only thing that would corroborate the plaintiff's testimony was the introduction into evidence, over the objection of the defendant, of three medical bills. There was no foundation laid for the introduction of these rank hearsay documents. These bills are: St. Joseph's Hospital, $3,274.10; Dr. V. V. Williams, $1,250.00; Association Anesthesiologists, $550.00. There is no testimony that these bills were for a by-pass operation on the plaintiff or anything else. They cannot be used as evidence to prove that any such operation was undergone by the plaintiff. [See: Cloney v. Travelers Insurance Co., 253 So.2d 83 (La.App. 4 Cir. 1971) at p. 95. The Court of Appeal disallowed medical benefits wherein only bills for services were introduced and there was no evidence to show these services were rendered for injuries incurred in the accident. Brister v. Martinez, 277 So.2d 751 (La.App. 4 Cir. 1973). Medical expenses for X-rays taken 8 days less than one year from the date of the accident were disallowed. Injured party had the X-rays taken when he experienced a flare-up of pain. He assumed his pain to be a result of the accident but consulted no physician about the need for X-rays].
Certainly the plaintiff cannot testify regarding such an intricate medical and surgical procedure. There is no explanation whatever in the record as to why the testimony of any doctor regarding such an operation was not introduced. We note here that the rule of evidence is that when the plaintiff is unable to provide a sufficient explanation as to why a treating physician's testimony is not introduced, it is presumed that such testimony would be adverse to plaintiff's cause. McCauley v. LaFleur, 213 So.2d 176 (La.App. 3 Cir. 1968) and cases cited therein. Plaintiff's claim rests upon the supposition that the by-pass operation performed in Houston was necessitated by the accident.
More importantly, however, is that there is no evidence whatever connecting such an operation, if it was undergone, in which the plaintiff was involved. It is certainly the duty of the plaintiff to prove first, that he underwent such an operation and, secondly, and more importantly, that its necessity was brought about by the accident. Sattler v. Allstate Insurance Company, 225 So.2d 54 (La.App. 3 Cir. 1969); Pierrotti v. St. Paul Fire & Marine Insurance Co., 273 So.2d 263 (La.App. 3 Cir. 1973). Since the plaintiff has failed to sustain this burden of proof the award for pain and suffering, loss of wages and medical expenses for such an alleged operation and period of disability must be disallowed.
We are of the opinion that an award of $3,500 for the pain and suffering for the cervical sprain and possible lumbar sprain and the few bruises suffered in the accident *562 is quite adequate for the small amount of discomfort that plaintiff proved that he sustained.
The defendants make no complaint of the award for the expenses for drugs and we therefore affirm this item of the award. The defendants make no complaint of the award for the property damage and automobile rental and this is likewise affirmed. The award for loss of earnings for the period he claims to have been in the hospital in Houston must be disallowed. This dictates an award for loss of earnings of $250 for the two periods of hospitalization at the Savoy Hospital.
The judgment of the trial court is amended so as to award as follows:

TO: Allstate Insurance Company $1,254.11
TO: Joseph Glen Vidrine
Pain and suffering $3,500.00
Property damage deductible 100.00
Loss of earnings 250.00
Savoy Memorial Hospital 169.20
Savoy Memorial Hospital 334.85
Automobile rental 760.00
TOTAL $5,114.05

The plaintiff is entitled to legal interest from judicial demand until paid.
The defendants are assessed all costs in the district court and plaintiff is cast for all costs in this court.
AMENDED AND AFFIRMED.
DOMENGEAUX, J., concurs in the result reached and assigns written reasons.
WATSON, J., concurs in part and dissents in part.
DOMENGEAUX, Judge (concurs in the result reached).
Plaintiff was awarded $10,900.00 for damages referable to a by-pass operation. There is no medical or other evidence to connect the alleged operation with the accident. Additionally, he was awarded approximately $12,500.00 for pain and suffering due to back injuries from the accident. Beyond a couple of months his medical proof was practically nil on that score. Simply stated, whatever back condition plaintiff may have is caused by his extreme obesity which preceded the accident. There is no proof of aggravation.
WATSON, Judge (concurring in part and dissenting in part):
The award made by the trial court in this case falls into two categories: (1) damages for pain, suffering, disability, loss of wages and medical expenses resulting from the injuries sustained in the accident; and (2) damages for pain, suffering, loss of wages and medical expenses involved in an intestinal by-pass operation which plaintiff alleges he had in order to reduce his obese condition and promote recovery of his back injury.
As to the by-pass operation, I concur with the majority that an award should not have been made. There is insufficient proof to establish that plaintiff in fact had such an operation. The record is devoid of testimony, deposition or medical report from the physician who performed the operation; the only evidence is plaintiff's testimony and some medical bills.
As to whether plaintiff could have recovered for the by-pass operation if proven, I reserve judgment.
I dissent vigorously from the reduction of the award of general damages to plaintiff. The trial court awarded the sum of $12,500, based on: the fact that plaintiff was involved in an automobile collision, which resulted in $1,354.11 damages to his vehicle; that he suffered bruises and contusions about his arms, shoulders and chest; that Dr. Savoy, the physician who examined him initially, found definite muscle spasm of the neck and some spasm in the low back (difficult to discern because of obesity [TR. 62]); that another physician found a narrowing of a vertebral interspace; and that plaintiff testified he has continued to suffer with his back since the accident. The trial court may have been impressed with the fact that Dr. Jackson, a qualified neurosurgeon, testified he "suggested" a bulging disc in the *563 lumbar region. It is important to note that the physicians, who according to the majority did not confirm plaintiff's back injury, did not deny the validity of his complaints. Plaintiff was so fat that the doctors could not either confirm or deny the continued existence of the injuries to his low back. It is unfortunate that plaintiff is obese, but defendants take plaintiffs as they find them. One final factor which may have impressed the trial court is that plaintiff has lost 150 pounds, attempting to relieve the back pain which the majority concludes he does not have.
Obviously, the trial court was impressed with the extent of the injuries found by the physician who examined plaintiff immediately following the accident and with the sincerity of plaintiff's complaints. The trial court made a credibility judgment in believing plaintiff and in making an award based on the testimony he heard.
The majority is clearly substituting its judgment for that of the trial court in holding that the highest possible award which could be given plaintiff for his various injuries is the sum of $3,500 in general damages. This case points up the problems encountered by the Court of Appeal in substituting its judgment for that of the trial court or trial jury in damage awards. Compare, for example, this award by the majority of $3,500 to the $15,000 (cut from $59,000 given by a jury) in Schexnayder v. Carpenter, 338 So.2d 344 (La.App. 3 Cir. 1976) where the plaintiff had injuries not unlike those of Vidrine. Mrs. Schexnayder also claimed a traumatic neurosis but the majority there gave short shrift to her contentions. She was never hospitalized (Vidrine was in the hospital twice), and her medical for the bruises and neck strain was $175 (Vidrine had doctor and hospital billsnot related to the by-passof $504.05 and drug bills for muscle relaxants and pain pills of $577.68). This court held that the largest possible award to Mrs. Schexnayder was $15,000 and now the majority is holding that the largest possible award to Vidrine for similar injuries is $3,500. This approach, in my opinion, is in the teeth of the recent jurisprudence of the Louisiana Supreme Court, interpreting LSA-C.C. art. 1934. See Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) and cases cited therein.
Therefore, I respectfully dissent from the reduction in the ward of general damages from $12,500 to $3,500.
HUMPHRIES, Judge.
ON APPLICATION FOR REHEARING
One of the complaints in plaintiff-appellee's application for rehearing is the failure of this Court to allow for drug expense awarded by the district court. In our opinion we stated:
"The defendants make no complaint of the award for the expense for drugs and we therefore affirm this item of the award."
In our recapitulation of the award we inadvertently omitted this item. The award total is amended to include this $802.68 for a total award of $5,916.73.
In addition, the first sentence of the first full paragraph on page 8 is amended to add the words "with the accident" between the words "undergone" and "in" to read thusly.
More importantly, however, is that there is no evidence whatever connecting such an operation, if it was undergone, with the accident in which the plaintiff was involved.
The application for a rehearing is otherwise denied.
WATSON, J., votes for a rehearing.