421 So.2d 391 (1982)
Brenda LINER and Wayne Liner
v.
William PATRICK, et al.
No. 15126.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Lynn Lightfoot, Houma, for plaintiffs and appellants.
William Bonin, New Iberia, for defendant and appellee.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
On May 12, 1976, at approximately 8:00 p.m., Brenda Liner (plaintiff) was a passenger on Wayne Liner's (her husband) 1976 Harley Davidson motorcycle. They were proceeding in an easterly direction on Tunnel *392 Boulevard near Voisin Street in Houma, Louisiana. Jeffrey Patrick, a minor, was operating a 1967 Chevrolet automobile, proceeding in a northerly direction on Voisin Street. Liner's motorcycle collided with the left rear of the Patrick vehicle at the intersection of Voisin and Tunnel. The Liners brought suit against William Patrick (Jeffrey's father), Offshore Painting Contractors, Inc., and Continental Insurance Company (defendants), for damages allegedly sustained as a result of that collision.
After trial, the trial court handed down written reasons for judgment, finding that the sole and proximate cause of the accident was Jeffrey Patrick's negligence; that plaintiff sustained minor injuries consisting of general bruises and contusions but no permanent injury or disability. Specifically, it said:
"Although plaintiffs alleged more serious injuries and more lasting pain and immobility, plaintiffs failed to carry the burden of proof on these items."
The trial court awarded general damages in the sum of $1,500.00 and special medical expenses were found to total $422.79. Since Continental, without admitting liability, had paid $384.75 of the medical expenses, the difference of $38.04 was actually awarded.
The Liners have perfected this appeal solely on the issue of quantum. They articulate the issue presented on appeal to be:
"Whether the Trial Court erred in its finding of fact with relation to the severity of injury, the amount of damages and the amount of medical expenses."
Defendants answered this appeal, contesting the trial court's findings as to liability and the representative capacity of William Patrick, Jeffrey's father. It is unnecessary for us to consider this answer, as the defendants have represented in brief that should we conclude that the trial court's judgment as to quantum was proper, they would accept it as final and abandon their contest over liability. For reasons hereinafter set forth, we affirm the trial court.
Immediately after the accident, plaintiff was taken to Terrebonne General Hospital.
Her testimony regarding her initial treatment was:
"Q What hospital did you go to?
A Terrebonne General.
Q And when did you go there?
A Immediately after the accident.
Q When you got to the hospital what happened?
A I was examined, X-rayed, different tests run on me, checking my blood and my urine, different  various tests.
Q Did you see any doctor there?
A Yes
Q What doctor did you see?
A The doctor that was on call at that time. I believe it was a Dr. Ellender.
Q Were you given any medication at that time?
A Pain medication.
Q Following the trip to the emergency room did you seek medical treatment?
A Yes. A few days after the accident I couldn't stand the pain in my head or my hip any longer. So I called Dr. Warren who is my doctor and he wasn't in. So I saw Dr. Cinnater. And then I returned again to see Dr. Warren the next day and they checked me out. He could see that I had various injuries, but he referred me to Dr. Pete Rhymes, because he could help me further.
Q Do you remember how long after the accident you saw Dr. Warren?
A Within a day or two.
Q You said that he referred you to Dr. Rhymes. Did you then see Dr. Rhymes?
A Yes.
Q When did you first see Dr. Rhymes?
A I really don't know what day the appointment was, but it was very close to that time because I made it clear to them that I was hurting and I would like to be seen soon." *393 Dr. Pete N. Rhyme's testimony was taken by two depositions and introduced in lieu of his live testimony. He testified that he first saw plaintiff on October 21, 1976. Dr. Dorsey Dysart, a neurologist and psychiatrist, saw plaintiff initially on December 14, 1977, and again on January 9, 1978. Dr. Russell C. Grunsten saw plaintiff for evaluation on behalf of defendants on December 12, 1977. Dr. William A. Martin, a neurologist, saw her on two occasions for evaluation on behalf of defendants, on May 16, 1978, and on October 6, 1980. Dr. Homer D. Kirgis, a neurosurgeon, saw plaintiff on January 30, 1980. The record contains depositions or reports from all these physicians. The in globo offering of medical bills shows nothing significant relative to plaintiff's treatment for the five-month period after the accident, except the statement of Houma Medical and Surgical Clinic which shows that the Liners were billed for an office visit by plaintiff to Dr. Cinnater on May 15, 1976; an office visit to Dr. Warren on June 29, 1976; and another office visit to Dr. Warren on July 14, 1976. This statement seriously conflicts with plaintiff's testimony as set forth above, as does the fact that plaintiff's initial visit with Dr. Rhymes was not until October 21, 1976.
The plaintiff bears the burden of proof and must show by a preponderance of the evidence that each and every element of her case is more probable than not. A reviewing court is under a strict duty to review the record. The entire medical record concerning plaintiff's condition consists of the evidence as set forth above. That evidence, while somewhat ambiguous, indicated that plaintiff now suffers from cervical and low back problems. Dr. Dysart, after an electromyogram on December 14, 1977, found evidence of cervical and lumbar radiculopathy in the C-8 to T-1 level and at the L-4 to L-5 and S-1 levels. His differential diagnosis was that there was either a crushed nerve or disc injury at the cervical level and that a discogram was warranted. His findings were a year and a half after the accident.
Defendants argue that the adverse presumption rule must be imposed because plaintiff failed to provide a sufficient explanation as to why her treating physicians did not testify. In addition to the physicians previously mentioned, the record also alludes to several others: Drs. Guidry, Matherne, Huncke, Steigler, Comeaux, Simon, and Cenac. Defendants cite Vidrine v. Sentry Indem. Co., 341 So.2d 558 (La.App. 3rd Cir.1976), writ denied, 343 So.2d 202 (La. 1977), wherein the court held:
"... when the plaintiff is unable to provide a sufficient explanation as to why a treating physician's testimony is not introduced, it is presumed that such testimony would be adverse to plaintiff's cause."
341 So.2d at 561.
When considering whether to apply the adverse presumption, the trial court must consider all the circumstances and facts of the case, as the adverse presumption may be overcome by other evidence. See Theriot v. Transit Casualty Company, 265 So.2d 845 (La.App. 3rd Cir.1972), writ denied, 267 So.2d 211 (La.1972), where direct testimony of another physician was sufficient to avoid the adverse presumption for failure to call a physician who had examined a plaintiff before and after an accident. See Harney v. Kountz, 218 So.2d 913 (La.App. 4th Cir.1969), writ refused, 253 La. 1093, 221 So.2d 521 (1969), where the failure of plaintiff to call two examining physicians was held not to give rise to the presumption because their testimony would not have brought to light anything that had not been brought out in other testimony. See Bagley v. Commercial Union Ins. Co. of New York, 216 So.2d 102 (La.App. 1st Cir.1968), where it was held that the adverse presumption would not be invoked when plaintiff had established his case by a preponderance of other competent testimony.
There is evidence that plaintiff presently has cervical and low back symptoms. There is no medical evidence to enlighten us as to what transpired during the five-month period from the accident until plaintiff's initial visit to Dr. Rhymes. He treated her for many complaints, but primarily for a painful *394 coccyx. In response to questioning, he was of the opinion that if trauma caused pain in the coccyx, he would expect the pain to manifest itself within a day or so after the trauma.
Plaintiff's testimony reveals that she saw at least three physicians during this period, yet none were called to testify. We know that she went to Terrebonne General Hospital immediately after the accident, but its records were not introduced in evidence. LSA-R.S. 13:3714. Under these circumstances, where there was no evidence relative to plaintiff's medical condition for the five-month period immediately after the accident, it was proper to invoke the adverse presumption against the plaintiff.
The trial court found that plaintiff failed in her burden of proof to establish anything more than temporary bruises and contusions; and it specifically held that nothing of a permanent nature was shown by a preponderance of the evidence. After a careful analysis of the entire record, we find that we are not in a position to say that the trial court was clearly wrong in finding no permanent injury or disability or serious injury with lasting pain and immobility. Its finding that plaintiff suffered minor injuries consisting of general bruises and contusions was not clearly wrong. Its award of $1,500.00 in general damages and $38.04 in special damages was not an abuse of discretion. Its decision is affirmed at appellants' costs.
AFFIRMED.