526 So.2d 493 (1988)
Eddie GREEN, Jr.
v.
CEMENT PRODUCTS SERVICES, INC. and American Excess Underwriters.
No. 87 CA 1243.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*494 James Farrier, Baton Rouge, for defendant-appellant Cement Products Services, Inc.
John S. White, Jr., Baton Rouge, for defendant-appellant American Excess Underwriters.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Plaintiff, Eddie Green, Jr., filed suit against his former employer, Cement Products Services, Inc., (CPS) and its worker's compensation carrier, American Excess Underwriters (American), seeking worker's compensation benefits for temporary total disability, supplemental earnings benefits, penalties and attorney's fees. After trial on the merits, the trial court rendered judgment in favor of plaintiff, awarding supplemental *495 earnings benefits under LSA-R.S. 23:1221(3) in the amount of $140.80 per week through the period of his disability, past and future medical expenses, and travel expenses relating to plaintiff's treatment for the job related injury. Plaintiff's claim for penalties and attorney's fees was denied. Defendants appealed the trial court decision.
During the pendency of this appeal all proceedings against American Excess Underwriters were stayed pending disposition of American's voluntary petition for Chapter 7 relief filed in the United States Bankruptcy Court, Eastern District of Louisiana. We therefore limit our decision to CPS.

FACTS
The plaintiff is a thirty-nine year old male with a seventh grade education who has been employed as a manual laborer for over twenty years. The plaintiff was intermittently employed by CPS for approximately five years as a manual laborer. On or about April 9, 1985, while employed by CPS, the plaintiff stated that he injured himself at work around 9:30 a.m. when he picked up a piece of concrete and felt a stinging sensation in his back. He further testified that he reported the incident immediately to his foreman, Willie Shaw, and was told that they were short-handed and he would have to remain at work. He continued working in pain until 3:00 p.m. when he was unable to continue. He thereafter rested until 3:30 p.m. when he was helped to his car by Mr. Kennison and Mr. Serf, two co-workers, and driven home by Mr. Serf. The plaintiff testified that when he reached home he collapsed and remained in bed for four days with back pain. On April 13, 1985, the plaintiff's brother took him to see Dr. Montelaro who had treated the plaintiff once for high blood pressure in 1984. The doctor diagnosed an acute lumbosacral sprain and instructed the plaintiff to rest, use heat, and take prescribed medication and analgesic. The plaintiff did not return for any follow-up. At the time of the injury the plaintiff weighed 340 pounds, a weight he maintained much of his adult life.
After seeing Dr. Montelaro, the plaintiff stated that he remained in bed for two weeks and thereafter required bed rest on and off for the next six months. During this time he was unable to do any type of labor and was forced to sell his car and boat in order to sustain himself financially.
The plaintiff was next seen by a Dr. Hulon Lott for purposes of qualifying for Social Security benefits. For reasons not made known to the court, Dr. Lott's diagnosis was not offered into evidence by either party during the trial of this matter. The plaintiff received his first Social Security benefits, presumably based on Dr. Lott's diagnosis, in August of 1985, four months after his alleged injury.
In February of 1986, the plaintiff began seeking treatment from Dr. Ted B. Thompson, D.O. He was seen a total of ten times after which the doctor concluded that he was unable to help the plaintiff due to his weight.
The plaintiff introduced a letter written by Dr. Thompson in lieu of his live testimony.[1] The letter did not include any diagnosis of the plaintiff's disability or the extent thereof.
The plaintiff stated that at the time of trial he was capable of caring for himself but has been unable to return to any type of employment since April 9th of 1985. He stated that he is unable to lift even a basket, but is capable of cooking and otherwise caring for himself. He considers himself disabled from performing manual labor and is required to take medication three times a day. The plaintiff further testified that after his injury on April 9, 1985, he made no attempt to contact CPS concerning his injury until he filed for worker's compensation benefits in February of 1986, ten months after his alleged injury.
*496 Mr. Kennison testified that he remembered the plaintiff being injured while working for CPS. He stated that he and the plaintiff were working together, moving concrete, when he saw the plaintiff pick up a piece of concrete and immediately thereafter the plaintiff told him that he felt like something had come loose in his back. They both continued working until 3:00 p.m. when the plaintiff told him that he could not continue. Mr. Kennison noticed that the plaintiff was shaking and told him to sit down and that he would do the best he could alone. Thereafter, Mr. Kennison remembers lifting the plaintiff and helping him into his car. Mr. Kennison testified that he was not present when the plaintiff told Willie Shaw about the injury but remembers Willie Shaw telling him that day that "Rerun" (the plaintiff) had injured his back.
Mr. Serf testified that the plaintiff told him about his injury in April of 1985, and that he helped the plaintiff into his car the day he injured his back and drove him home.
Annie Bell Gails, the plaintiff's cousin, testified that she takes care of most of the plaintiff's business because he is unable to read or write very well. She also stated that prior to the accident plaintiff, even with his weight condition, was able to function very well. However, since his injury he has a difficult time getting in and out of cars, he is unable to sit or stand for long periods of time, and he has trouble walking for any distance.
Charles Green, the plaintiff's brother, testified that since the incident the plaintiff has been unable to do things he did before the accident, including fishing.
Roland Stevens, Jr., President of CPS, testified that he did not receive any notice from the plaintiff or from any other employee concerning the alleged injury of April 9, 1985. It wasn't until the plaintiff filed a worker's compensation claim in February of 1986 that Mr. Stevens became aware of an injury. He further testified that Worker's Compensation notices, explaining proper notice requirements for injured employees, are posted on all the bulletin boards located on company property.
April Reech, an employee for CPS, also testified that Worker's Compensation notices were posted on all the bulletin boards and time clocks on CPS property.
The trial court found in favor of the plaintiff, awarding supplemental earnings benefits[2] in the amount of $140.80 per week, commencing on April 10, 1985, and continuing during the period of plaintiff's disability. The court further awarded the plaintiff all past and future medical benefits and necessary medical transportation. The court's oral reasons concluded that the plaintiff was injured during his employment with CPS and that although the notice requirements of the Worker's Compensation statute were not complied with, the evidence showed that Willie Shaw, CPS's foreman, was told immediately about the accident, and because of that fact the employer was not prejudiced in this case.
The defendant, CPS, asserts the following errors by the trial court:
1. The trial court erred in finding that the claimant was unable to earn wages as a result of an injury produced by the accident alleged.
2. The lower court judgment was incorrect in that the claimant failed to produce available evidence bearing on his alleged disability and its inception.
3. The judgment is incorrect insofar as the computation of benefits exceeds the statutory method of computation.
4. The trial court erred in awarding past and future medical and travel expenses, as no evidence was submitted in the amount of these items.
5. The trial court erred in providing for continuing payments during plaintiff's disability without limiting the same to the statutory limitation of 520 weeks.
*497 The defendant contends that the plaintiff failed to prove his inability to earn wages as a result of the alleged injury of April 9, 1985, and that the failure to introduce the diagnosis of Dr. Lott created a presumption that the testimony of Dr. Lott would have been adverse to the interest of the plaintiff. We will consider these arguments together, as they both bear on the sufficiency of evidence required to prove a disability, and the extent thereof.

PROOF OF DISABILITY
In order to recover temporary total disability benefits, an injured employee must prove by a preponderance of the evidence that he is unable to engage in any self-employment or gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience. LSA-R.S. 23:1221(1).
Furthermore, in order to recover supplemental earnings benefits an injured employee must prove by a preponderance of the evidence that the injury resulted in the employee's inability to earn wages equal to ninety (90%) percent or more of wages at the time of injury, whether or not the same occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training or experience. LSA-R.S. 23:1221(3)(a).
The amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain. LSA-R.S. 23:1221(3)(b).
If an employee is not engaged in any employment or self-employment or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment which he was physically able to perform, and (1) which was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i). However, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment. LSA-R.S. 23:1221(3)(c)(ii). (Emphasis added.)
The facts reveal that the plaintiff had no history of back problems prior to April 9, 1985, and that he performed strenuous manual labor much of his adult life. The plaintiff testified that he has not been employed since April 9, 1985, and is now able to perform only minimal tasks such as cooking and caring for himself and is unable to lift even a basket. The testimony of Annie Bell Gails and Charles Green corroborated the plaintiff's testimony concerning his inability to perform any strenuous labor. The medical evidence in support of the plaintiff's claim consists of two scant reports. Dr. Montelaro's report states that, on April 13, 1985, he diagnosed an acute lumbosacral sprain and recommended rest, heat, medication and analgesic. The plaintiff never returned for a follow-up. Dr. Thompson's report makes no diagnosis and states only that he has seen the plaintiff ten times and that due to his weight problem he can do nothing to alleviate his problem. We note that the insurance claim forms attached to Dr. Thompson's report indicate both a total and partial disability since April of 1985. The forms also indicate several treatments for a lumbar sprain/strain and one treatment for a lumbosacral sprain/strain.
The finding of disability within the framework of the worker's compensation law is a legal rather than purely a *498 medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the question of disability, and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability, and the court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert make upon the court. Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La.App. 2d Cir.1987).
As a general rule the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party; however this rule applies only in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987).
In the present case, the court must also consider the effect of the plaintiff's failure to introduce the testimony of Dr. Lott, that is, whether the court will presume that Dr. Lott's testimony would have been adverse to the plaintiff. When determining whether to apply the adverse presumption rule, the trial court must consider all the circumstances and facts of the case, as the adverse presumption may be overcome by other evidence. Liner v. Patrick, 421 So.2d 391 (La.App. 1st Cir.1982). See also Daigre v. Department of Transportation and Development, 461 So.2d 609 (La. App. 1st Cir.1984). It is the defendant's contention that Dr. Lott is the only doctor who diagnosed a disability and that his testimony will show that the disability from which the plaintiff suffers commenced prior to April 9, 1985, and is different in nature than that alleged by the plaintiff. The defendant bases this contention on the fact that the plaintiff began receiving Social Security benefits only four months after his alleged injury. The defendant directs the court's attention to 42 U.S.C.A. which provides for a minimum disability period of five full months prior to an award of disability benefits.
In reviewing a trial court's findings of fact, an appellate court cannot overrule the trial court's evaluation of witnesses and determination of facts unless the record reveals the trial court's findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Considering all the circumstances and facts of this case, we agree with the trial court's finding that the plaintiff did in fact suffer an injury during the scope and course of his employment with CPS and that the injury caused a resulting disability. However, we find the trial court's award of supplemental earnings benefits clearly wrong. We find the evidence presented on the issue of disability and inability to earn wages insufficient to support the award of supplemental earnings benefits. Although the plaintiff offered testimony which described his physical problems, the evidence did not indicate to what extent he is disabled by these problems. There is no evidence as to whether the plaintiff can do any type of work, and if so, when he would be able to work. While the evidence presented by the plaintiff may have been sufficient in itself to establish entitlement to some form of worker's compensation benefits, it is not sufficient to overcome an adverse presumption based on the plaintiff's failure to introduce the diagnosis of Dr. Lott. Rather than dismiss the plaintiff's claim based on the adverse presumption rule, we instead, in the interest of justice, remand the case to the trial court with instructions to reopen the record for the admission of Dr. Lott's testimony and other available evidence as to the nature and extent of the plaintiff's disability. LSA-C.C.P. art. 2164.
Although we may find merit in the defendant's remaining assignments of error, we pretermit any decision on them in light of remand.
For the reasons assigned, the judgment of the trial court is vacated. We remand for reconsideration of the issue of disability *499 by the trial court. All costs to await final disposition of the matter.
JUDGMENT VACATED, AND REMANDED.
NOTES
[1] The doctor's report stated that: "We have repeatedly urged this patient to lose weight, but this is far easier said than done. We cannot justify his returning under the present circumstances because there is nothing we can do to alleviate his problem. 345 lbs. resting on that lumbosacral complex is just totally frustrating. So we had to dismiss him."
[2] We note a discrepancy in the judgment of the trial court which erroneously stated that partial disability benefits are awarded pursuant to LSA-R.S. 23:1221(3). Clearly the court intended to award Supplemental Earnings Benefits under LSA-R.R. 23:1221(3), as it stated in its oral reasons for judgment.