543 So.2d 946 (1989)
Blaine A. BABINEAUX
v.
BROWN & ROOT, INC. and Highlands Insurance Company.
No. 88-CA-807.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
Rehearing Denied May 17, 1989.
*947 John K. Leach, Christovich & Kearney, New Orleans, for defendants/appellants, Brown & Root U.S.A., Inc. and Highlands Ins. Co.
Robert R. Faucheux, Jr., LaPlace, for plaintiff/appellee.
Before KLIEBERT, BOWES and WICKER, JJ.
BOWES, Judge.
This action arises from a suit for worker's compensation benefits. The trial court determined plaintiff/appellee, Blaine Babineaux (hereinafter Babineaux), was temporarily totally disabled and awarded him supplemental earnings benefits (SEB) for five hundred (500) weeks and found the appellants to have been arbitrary and capricious in failing to pay supplemental earnings benefits and ordered them to pay a penalty of 12% of the total amount of the claim, together with legal interest on the penalty and $5,000.00 in attorney's fees. We reverse in part and revise and affirm in part.
Prior to the accident, Babineaux was employed by Brown & Root U.S.A., Inc. (hereinafter Brown & Root) for approximately three and one-half (3½) years, before the time he received his first lay-off due to reductions in the work force. On April 8, 1985, Mr. Babineaux was employed as a boilermaker. He sustained an injury to his right knee and received medical attention from the Brown & Root medic and returned to his employment duties.
On May 6, 1985, Babineaux experienced a "giving-out of his knee" and he sought medical treatment with Dr. V.J. Zeringue, an orthopedist, who diagnosed a right knee strain with a possible tear of the meniscus. The doctor restricted Babineaux to light duty. From May 6-June 7, 1985, he returned to work in the Brown & Root tool room in accordance with the doctor's instructions.
Mr. Babineaux's problems persisted and, on June 11, 1985, he was hospitalized and, the following day, arthroscopic surgery was performed by Dr. Zeringue. The surgery revealed no tear of the meniscus. During surgery, the physician removed inflamed synorial tissue within the knee joint and he also smoothed-out the articulate cartilage in the knee joint.
The appellee improved steadily and was discharged and released to return to full duty without restriction on September 19, 1985. Dr. Zeringue did not assign any anatomical or functional impairment rating, stating at his deposition that he felt that the plaintiff's condition did not warrant any such impairment.
During the period of June 7-September 22, 1985, Babineaux received worker's compensation benefits at the maximum rate of $248.00 per week. Additionally, all of his medicals which he incurred were paid.
The appellee returned to work at Brown & Root as a boilermaker, at a higher rate of pay than that when he was injured, until October 11, 1985, when he was laid off as a result of a reduction in the work force. He returned to work for Brown & Root on one other occasion, from March 13, 1986 through March 29, 1986, when he was *948 again laid off due to a reduction in the work force.
On April 2, 1986, the appellee returned to Dr. Zeringue complaining of "popping" sensation and occasional swelling and pain in the right knee with weather changes. At that time, Babineaux inquired as to the disability in the right knee. After that visit, Dr. Zeringue wrote a letter to Highlands Insurance Company and stated: "I explained to him [Babineaux] that I saw no impairment in the right knee on this evaluation." During the examination, Dr. Zeringue could find no objective physical problems with the knee and could not hear the "popping" noises of which the appellee complained.
Mr. Babineaux re-injured his right knee while jogging on the levee on May 5, 1986, and returned to see Dr. Zeringue. Appellee's condition was diagnosed as a fracture of the posterior side of the tibial plateau. Appellee was restricted from working from May 6 to June 19, 1986. He was released to return to light duty and was scheduled to return to see Dr. Zeringue on July 29, 1986. He did not keep that appointment, but did return on November 25, 1986, at which time he was released to return to full duty with no restrictions.
During the period between Babineaux's lay-off from Brown & Root in October, 1985, and his injury on May 5, 1986, he held several jobs. He returned to Brown & Root for a brief period in March, 1986. Additionally, he attended modeling school for a short while, worked for River Parish Disposal as a welder's helper, was employed by Ormond Country Club, worked for Louisiana Grain Services, and, in January 1986, acquired an interest in Buck's Refinishing Shop, where he was working at the time of the jogging accident. Unfortunately, this business went into bankruptcy in December 1986.
On December 30, 1986, Babineaux went to work for Contract Employees Service, Inc. as an electrician/heavy machine finisher at Pellerin Milnor Corporation. In June of 1987, he was employed directly by Pellerin Milnor in the construction and final assembly of industrial washing machines. He was so employed at the time of trial.
Appellants appeal and present two issues for our review:
1. Whether the trial court erred in disregarding the medical testimony presented by Dr. V.J. Zeringue which established that petitioner is not disabled or restricted from any employment and in determining that petitioner is entitled to supplemental earnings benefits (hereinafter referred to as S.E.B.).
2. Whether the trial court erred in finding that the defendants acted in an arbitrary and capricious manner and that petitioner is entitled to penalties in the amount of 12% of the total judgment and attorneys' fees in the amount of $5,000.00.
Assignment of Error Number One
Appellants assert that the trial court erred in rendering judgment in favor of Mr. Babineaux and holding defendants liable for supplemental earnings benefits for a period of 500 weeks. Appellants claim that the uncontradicted medical evidence produced at trial indicates that Babineaux was discharged to return to work without restriction by his treating physician. They state, therefore, that Babineaux's wage earning potential has not been limited to any degree by his knee injury and that he is not entitled to receive S.E.B.
We must initially point out the most obvious error in the trial court's judgment. The trial court ruled that Babineaux was temporarily totally disabled and entitled to S.E.B. In order to recover temporary total disability, an injured employee must prove by a preponderance of the evidence that he is unable to engage in any self-employment or gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training or experience. LSA-R.S. 23:1221(1); Green v. Cement Products Services, Inc., 526 So.2d 493 (La.App. 1 Cir.1988).
*949 In the instant case, except for a brief period after his re-injury from May 5, 1986 to June 19, 1986, Babineaux was either gainfully employed for wages or self-employed after both injuries and up to and including the time of trial. Therefore, he was not temporarily totally disabled during the entire period covered by the trial court's judgment.
The trial court awarded S.E.B. for a period of 500 weeks. To qualify for supplemental earnings under LSA-R.S. 23:1221(3) a plaintiff is required to prove by a preponderance of the evidence that a work-related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of the injury. Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037 (La.App. 3 Cir.1986). In determining if an injured employee has made out a prima facie case of entitlement to S.E.B., the district court should take into account the totality of the evidence, including all of those factors which might affect an employee's ability to earn a wage of less than that he previously earned. Gaspard v. St. Paul Fire & Marine Insurance Co., supra; Green v. Cement Products Services, Inc., supra.
Louisiana's supplemental earnings benefits are a form of wage loss. In this regard, it is similar to what was known under the concept of partial disability benefits found in the 1975 Louisiana Worker's Compensation Law. Under the present Act, one of the most obvious differences is that the worker's pre-accident wages are now compared to the wages he is earning or is able to earn after the accident. Miller v. Great Southern Oil and Gas Co., Inc., 503 So.2d 679 (La.App. 3 Cir.1987) writ denied 505 So.2d 1144 (La.1987).
In his reasons for judgment in the instant case, the trial judge stated: "During the trial, Mr. Babineaux testified that his knee still gives him problems. He states that he cannot squat for extended periods of time and he experiences painful throbbing in his knee as if two bones were rubbing together. It can be inferred from the testimony that Mr. Babineaux is presently not qualified to return to such strenuous work as is required of a boilermaker or a similar position."
At trial, the following exchange took place between Babineaux and his counsel regarding the current condition of his knee:
"EXAMINATION BY MR. FAUCHEAUX [sic]:
Q. Okay. Mr. Babineaux, explain to us what feelings or problem you have with your knee as you are performing your job at the present time.
A. If I have to get in a tight position where I have my knee completely bent all the way in for a period of time, it will start hurting, it will start throbbing. I will have to get off of it and straighten it and give it a break. Sometimes when I'm walking, and I just twist my hips, it gives like a week [sic] feeling in it. Like I said before, whenever I squat down, it's got a real loud popping noise in it. It feels like just two bones rubbing or something. I don't know. It's irritating."
The appellee stated that while he worked for Buck's Refinishing (his employment immediately preceding and subsequent to his re-injury), he hauled furniture, delivered and picked it up.
A representative of Pellerin Milnor stated that in her capacity as benefits payroll coordinator Mr. Babineaux had never voiced any complaints about his knee to her. She also stated that the requirements of a large final assembler is that he must be physically fit to climb on machines and to lift heavy objects.
Dr. Zeringue, the physician who treated Babineaux after the initial incident and the re-injury, released him for unrestricted duty on both occasions. Immediately prior to the re-injury, Dr. Zeringue could not hear any popping of Babineaux's knee, found no swelling and could not verify clinically any physical problem. After the re-injury on May 5, 1986, Dr. Zeringue treated him conservatively and advised him to limit his activities through June 19, 1986. On that date, he was released to return to limited use of the right knee and return to light duty work. Mr. Babineaux had an appointment scheduled for July 29, 1986, *950 which he did not keep. He next saw Dr. Zeringue on November 25, 1986, at which time he was released to return to full duty status at work with no restrictions, including lifting any certain weight. There are no follow-up appointments set with the doctor.
We are aware that it is well established that the worker's compensation act is remedial in nature and that, in order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3 Cir.1988). The issue of disability is to be determined by the totality of the evidence, including both lay and medical testimony. The trial court's findings of work-related disability should not be disturbed where there is evidence, which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. Breaux v. National Union Fire Ins. Co., 527 So.2d 1207 (La.App. 3 Cir.1988); Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3 Cir.1987) writ denied 514 So.2d 130 (La.1987).
However, we find the trial court's award of supplemental earnings benefits for a period of 500 weeks clearly wrong. We find the evidence presented on the issue of disability and inability to earn comparable wages insufficient to support such an award.
We are unimpressed with appellee's testimony regarding his continuing disability after he was released to return to full duty following the re-injury of his knee. The record before us does not show there was any impairment between September 19, 1985 when the appellee was released to return to work from the first accident and May 5, 1986, the date of the second accident and no impairment after November 25, 1986, when he was released for full duty after the re-injury.
When asked if he had re-applied to Brown & Root after his re-injury, the appellee stated "No, he hadn't" and qualified his answer with the following statement: "The reason being is that they got a sign saying no applications being accepted, that's why." We certainly empathize with Mr. Babineaux's employment problems. However, we do not find that his continuing loss of wages and inability to earn comparable wages are due to physical restrictions, but are attributable rather to a depressed labor market in this area. Miller v. Great Southern Oil and Gas Co., Inc., supra.
We do find that the re-injury of Mr. Babineaux's knee was related to the injuries sustained in the first accident. Therefore, we find that he was temporarily and totally disabled and entitled to full worker's compensation benefits from the date of his second injury, May 5, 1986, until he was released by Dr. Zeringue to return to light duty on June 19, 1986. He is also entitled to all medical expenses for the re-injury of his knee.
Mr. Babineaux testified that when he was released by Dr. Zeringue to do light work, June 17, 1986, he returned to Buck's Refinishing and did office work, answering the phone and other administrative duties, because he still had his immobilizer on. The record indicates Babineaux made approximately Two hundred ($200.00) per week while working at Buck's Refinishing, which was paid in cash. There is no indication that this sum was decreased while he was on light duty. The argument could be made, however, that while the appellee was on light duty he was unable to perform the duties of a boilermaker. Therefore, we will allow the appellee to receive supplemental earnings benefits pursuant to LSA-R.S. 23:1221(3) from June 20, 1986 through November 25, 1986, when he was again released, without restrictions, for full duty by Dr. Zeringue.
Assignment of Error Number Two
Appellants argue that the trial court erred in finding that the defendants were arbitrary and capricious in failing to provide S.E.B. According to the provisions of the 1983 revisions of the Worker's Compensation Law, the arbitrary and capricious standard is no longer applicable to the assessments of penalties and the provisions *951 of LSA-R.S. 22:658 are no longer applicable. Chelette v. American Guar. & Liability Ins., 480 So.2d 363 (La.App. 3 Cir. 1985). The assessment of penalties is now governed by LSA-R.S. 23:1201(E), which provides in pertinent part:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. [Emphasis supplied]
A claimant's right to benefits will be deemed reasonably controverted if the employer or insurer had sufficient factual and medical information presented by the claimant. Breaux v. National Union Fire Ins. Co., supra.
We find that the initial medical information received by Brown & Root and its insurer indicated the second injury to Mr. Babineaux's knee was due to a jogging accident. Therefore, we find the employee's right to such benefits has been reasonably controverted so the penalties of LSA-R.S. 23:1201(E) do not apply.
The issue of attorney's fees is provided for in LSA-R.S. 23:1201.2, which states:
§ 1201.2. Failure to pay claims; discontinuance; attorney's fees
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter.
The arbitrary and capricious standard used under the prior law still applies to attorney's fees. Breaux v. National Union Fire Ins. Co., supra. Based on the facts discussed above, we also find that the appellants were not arbitrary and capricious in their termination of worker's compensation benefits since they relied on medical evidence that the second injury was caused by a jogging accident.
*952 For the foregoing reasons, the judgment of the trial court against appellants is revised to award Mr. Babineaux full worker's compensation benefits from May 5-June 19, 1986 and supplemental earnings benefits from June 20 to November 25, 1986. Mr. Babineaux is entitled to all medical expenses due to the re-injury of his knee on May 5, 1986. The trial court's judgment is reversed insofar as it awarded penalties and attorney's fees to the appellee.
REVERSED IN PART AND REVISED AND, AS REVISED, AFFIRMED.