GOTHARD, Judge.
In this suit, a worker’s compensation claimant appeals a judgment dismissing his claim against his employer and its insurer.
Lawrence Pinkins, Sr. was injured on March 31, 1988 in a vehicle collision, while in the course and scope of his employment as a truck driver for Cardinal Wholesale Supply, Inc. He was then 57 years old, had completed sixth grade, and had performed heavy labor since he was sixteen years of age. He had been employed by Cardinal 25 years.
The plaintiff’s claim filed with the office of Worker’s Compensation was unsuccessful, as that office’s recommendation was rejected by one of the parties. He then filed suit against Cardinal Wholesale Supply, Inc. and Zurich Insurance, its compensation insurer, seeking compensation benefits and medical expenses. Trial was held on March 2, 1991, at the end of which the judge took the matter under advisement. Judgment was signed on January 7, 1992, dismissing the plaintiff’s claim with prejudice. On January 9, 1992, the employer notified the plaintiff that compensation payments had ceased because of the court decision. This appeal followed.
The issue before this court is whether or not Pinkins was capable of returning to work in any capacity and if so, whether the court erred in finding that he was able to earn wages equal to 90% or more of his wages at the time of injury.[1]
*249 The manifest error standard of appellate review applies to the court’s findings of fact, whether they are based upon live testimony or written evidence. Virgil v. American Guar. & Liberty Ins., 507 So.2d 825 (La.1987); Picou v. Circle, Inc., 578 So.2d 1183 (La.App. 5th Cir.1991). The trial judge here based his decision on live testimony as well as medical records and a physician’s deposition.
Pinkins injured his back in the accident. He was released to return to work after conservative treatment by Dr. Mark Juneau, an orthopedist to whom he was referred by the employer’s physician. He then consulted Dr. Ralph J. Gessner, an orthopedist, on July 20, 1988 on the referral of his attorney. Dr. Gessner’s deposition of October 25, 1989 and Dr. Juneau’s report of May 2, 1988 were introduced into evidence. Both orthopedists found degenerative changes in the lumbar spine from arthritis. An MRI was ordered by Dr. Gessner, from which he determined that there was a herniation of disc material in the L4-L5 area. The herniated material was not impinging upon a nerve root and the doctor felt surgery was contraindicated. He prescribed a corset and medication and limited Pinkins’ activities. In his opinion the herniation was attributable to the trauma of the accident but the narrowing of the disc spaces in the spine was unrelated. The prescribed medications were Dar-vocet — N100 for pain and Ansaid 100, an anti-inflammatory agent to be taken only as needed. Dr. Gessner also prescribed stretching exercises. He testified that from time to time Pinkins had mild spasm of the lumbar spine and some limitation of motion but presented no neurological findings. Pinkins reported pain only upon increased exertion. The last visit as of the date of the deposition occurred in August, 1989.
Lawrence Pinkins testified at trial that he has continued to see Dr. Gessner about every six weeks. He takes Vicodin tablet for pain night and morning, Tylenol during the day and a “nerve relaxer,” Flexeril, to help him sleep. He stated that he has not tried to return to work because the doctor *250 has not released him. Pinkins’ wife testified that he can do very little, that when he tries to do things he should not do his back hurts to the extent that he must go to bed.
Dr. Gessner, in his August, 1989 deposition, testified that Pinkins “would be capable of sedentary activity” and mentioned that sedentary activities at home were helping Pinkins. When asked about limitations on physical activity, Dr. Gessner replied:
... I restricted him to no lifting of anything greater than 10 or 15 pounds a day, not on a repetitive basis. I restrict sitting for long periods of time. No bending, stooping, squatting, crawling, kneeling, unless it is absolutely necessary for him to do so. And then try to maintain some type of environmental control, stay warm, et cetera. And he was a truck driver and, so, that required repetitive movement to the lower extremities for control of the clutch and gas, so I restricted him from that.
The doctor said that he could occasionally lift but not do repetitive lifting and that he should avoid sitting for long periods of time.
... We found out that sitting aggravates low back pain more than standing or walking and there seems to be more pressure on the lumbar disc spaces when sitting. So, when he gets into the sitting position, for example, watching a football game or riding in a car for more than hour, he should get up and walk around a little bit....
In support of the plaintiffs disability, his counsel emphasized his limited educational background and the fact that he was taking a narcotic for pain.
Pinkins testified that he failed two grades and completed only the sixth grade, leaving school to go to work at age sixteen. He is able to read street names but does not read the newspaper. He never had to handle cash in his job as truck driver and said he was unable to make change. He was required to keep a log of mileage and time for his delivery stops. On cross examination he admitted he was able to read bills of lading to see which supplies to deliver to each site. He later said that he could do simple addition and subtraction.
A former warehouseman at Cardinal Wholesale testified that he was Pinkins’ supervisor. Pinkins made deliveries to the same customers each week and did ask for help in reading the delivery tickets. However, he made no errors in delivering the materials. The employee agreed that Pin-kins rarely received cash from customers but had to count it on those occasions. He was given expense money for lunch and vehicle emergencies while on the road, was required to account for it and always did so correctly.
The plaintiff’s expert in vocational rehabilitation, Dr. Cornelius Gorman, testified that, based upon a hypothet posed by plaintiff’s counsel, a man of plaintiff’s age, education, physical restrictions and work experience would not be able to compete for gainful employment. Furthermore, he would not meet the reasonable standard for the state to furnish rehabilitation services. The problem would be compounded by his medication. Dr. Gorman stated that his only contact with the plaintiff was a fifteen to twenty minute conversation on the morning of trial; he had read some of the medical records.
Patricia Knight, a self-employed rehabilitation counselor, was accepted as the defendant’s expert in vocational rehabilitation. Because of a previous ruling by the court on the plaintiff’s opposition to the employer’s motion to compel vocational examination, she was not permitted to interview or test Pinkins. Based upon depositions of the plaintiff and Dr. Gessner and two medical reports and upon Pinkins’ live testimony, she located four positions which met his physical restrictions. She then met with Dr. Gessner, who approved only one, that of cashier at a service station. She agreed that Pinkins might have difficulty handling cash but stated that programs were available for short-term training of persons with disabilities who wished to return to work. She felt Pinkins would be a candidate for rehabilitation, although she had not taken into account the effect his *251 taking narcotic medication might have on his employability.
We find that the record supports the court’s finding that the plaintiff did not qualify for disability under the statutory criteria for temporary total disability, permanent total disability, or supplemental benefits. Once his treating physician had approved his attempting to return to work he was no longer temporarily totally disabled.
For permanent total disability status the claimant is required to prove “by clear and convincing evidence, unaided by any presumption of disability,” that he is unable to engage in any employment. The trial court’s finding of fact in this regard may not be disturbed unless it is clearly wrong. Because of the lack of an evaluation, there was no proof of the plaintiff’s educational disability; furthermore, it was apparent that he had been able to perform the simple reading and arithmetic required in his previous employment. We note further that the last physician’s report was Dr. Gess-ner’s deposition of August, 1989, two years before the trial, and no medical evidence regarding the possible harmful effects of the medication he was currently taking was submitted.
In order to qualify for supplemental earnings benefits, the plaintiff must prove by a preponderance of the evidence that he is unable to earn wages equal to 90% of his wages at the time of injury. Babineaux v. Brown & Root, Inc., 543 So.2d 946 (La. App. 5 Cir.1989), writ not considered 548 So.2d 1221 (La.1989). As Pinkins did not attempt to return to work, despite his treating physician’s approval of his doing so within certain restrictions, no evidence is on record to show his inability to earn 90% of his pre-injury wages.
For the reasons assigned above, the judgment appealed from is affirmed.
AFFIRMED.

. At the time of the accident LSA-R.S. 23:1221 read as follows in pertinent part:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when in *249 jured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage ■ in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. ...
The statute provides further than an employee is not required to work in pain.