619 So.2d 52 (1993)
Lawrence PINKINS, Sr.
v.
CARDINAL WHOLESALE SUPPLY, INC. and Zurich American Insurance Company.
No. 92-C-3081.
Supreme Court of Louisiana.
May 24, 1993.
*53 Richard A. Weigand, Dee O'Neil Andrews, Weigand, Levenson & Costa, New Orleans, for applicant.
Steven D. Oliver, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Harvey, Delbert G. Talley, Covington, for respondents.
ORTIQUE, Justice.[1]
In this workers' compensation case, writ was granted to determine whether the trial court erred in finding that Lawrence Pinkins, Sr., claimant-plaintiff, was capable of returning to work in any capacity and that he was able to earn wages equal to 90% or more of his pre-injury wages. The trial court dismissed the claimant's petition with prejudice upon finding that the plaintiff did not qualify for temporary disability under the statutory criteria for temporary total disability, permanent total disability, or supplemental benefits.[2] The appellate court affirmed the judgment of the trial *54 court. We find, under the facts presented by this particular case only, due to the totality of factors related to a realistic appraisal of access to employment, this claimant's marginal literacy, age and work related disability, that Mr. Pinkins has experienced a loss in wage earning capacity within the meaning of LSA-R.S. 23:1221(3)(a). We therefore find that plaintiff is entitled to supplemental earnings benefits (S.E.B.). The judgment dismissing plaintiff's claim for workmens' compensation benefits is reversed and the case is remanded for further proceedings in keeping with the principles enunciated herein.

I.
On March 31, 1988 Lawrence Pinkins, Sr., who was employed as a delivery truck driver with Cardinal Wholesale Supply, Inc., sustained injuries to his back in a vehicle collision in Hattiesburg, Mississippi while in the course and scope of his employment. The truck which he was driving was rear-ended by another automobile. Mr. Pinkins was 57 years of age at the time of the accident. Plaintiff filed suit against Cardinal Wholesale Supply, Inc. and its compensation insurer, Zurich Insurance Company for compensation benefits after one of the parties rejected the recommendation of the Office of Workers' Compensation. Cardinal Wholesale Supply, Inc. paid compensation benefits in the amount of $198.68 per week from the date of the injury through the date of trial on March 2, 1991. This represents a total in compensation benefits in the amount of $34,910.91.
On the day of the accident, plaintiff presented himself at the emergency room of Forrest General Hospital with complaints of pain in the neck, back and shoulders. He was treated and released that day. Upon his return to New Orleans, the employer referred plaintiff to Dr. Samuel Logan for further evaluation. Dr. Logan diagnosed plaintiff's condition as a lumbar sprain and treated plaintiff conservatively for four weeks. Due to plaintiff's continued complaints of back pain, Dr. Logan referred plaintiff to Dr. Mark Juneau, Jr., an orthopedist, who found degenerative changes and osteoarthritis. Dr. Juneau continued the conservative treatment initiated by Dr. Logan. He prescribed medication and physical therapy for plaintiff. Dr. Juneau treated plaintiff for five more weeks, and released him to return to work on May 28, 1988.
Mr. Pinkins did not return to work. Instead, on July 20, 1988, plaintiff consulted with Dr. Ralph J. Gessner, an orthopedist, upon referral of his attorney. Dr. Gessner ordered an MRI which confirmed degenerative discs at the L4-L5 and L5-S1 levels. Dr. Gessner did not relate this condition to the accident and injury. He did relate the herniation of the disc at the L4-L5 to the accident; however, he found no nerve root impingement. Dr. Gessner restricted plaintiff from repetitive lifting of anything in excess of ten to fifteen pounds, any repetitive bending, stooping crawling and kneeling. He is not to sit for extended periods of time. There is no prognosis for improvement in his medical condition. Driving trucks, therefore, is no longer a viable occupation for plaintiff.
Mr. Pinkins alleged in his petition for workmens' compensation that he was injured in the course and scope of his employment with Cardinal Wholesale Supply, Inc. Plaintiff further alleged that he suffered disability and claimed entitlement to compensation benefits.
Lawrence Pinkins, Sr. was 60 years old on the day that this matter came on for trial. He had been employed by Cardinal Wholesale Supply, Co. for 25 years as a delivery truck driver. His prior work history is that of a heavy laborer since he was 16 years of age. Mr. Pinkins is a black male with a sixth grade education. He is marginally literate, and capable of performing simple addition and subtraction.
The trial court found that Mr. Pinkins was not permanently and totally disabled within the meaning of LSA-R.S. 23:1221(2)(c). It found that he was not temporarily and totally disabled within the meaning of LSA-R.S. 23:1221(1). The court concluded that the plaintiff was not entitled to receive supplemental earnings benefits. In its reasons for judgment, the *55 trial court concluded that because the plaintiff was "released to return to work" by Dr. Juneau that he was not disabled under LSA-R.S. 23:1221(2)(c). The trial court further concluded that because the physicians released plaintiff to return to "certain types of employment" that Mr. Pinkins was not disabled under LSA-R.S. 23:1221(1). Finally, the court relying on Babineaux v. Brown & Root, Inc., 543 So.2d 946 (La. App. 5th Cir.1989), writ not considered, 548 So.2d 1221 (La.1989) determined that plaintiff was not entitled to receive supplemental earnings benefits. It reasoned that because the defendants located several jobs which plaintiff would be able to perform considering his physical restrictions, that the plaintiff did not prove by a preponderance of the evidence that the work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of the injury.
The appellate court affirmed. Pinkins v. Cardinal Wholesale Supply, Inc. and Zurich American Insurance Co., 608 So.2d 248 (La.App. 5th Cir.1992). That court reasoned that once the plaintiff's treating physician had approved his attempting to return to work he was no longer temporarily totally disabled. In its view, the trial court's finding of fact that plaintiff was not suffering under a permanent total disability did not need to be disturbed under the clearly wrong standard of appellate review. It pointed out that due to the lack of an evaluation, there was no proof of the plaintiff's educational disability. It noted that plaintiff had been able to perform the simple reading and arithmetic required in his previous employment. it found that "there is no evidence on the record to show plaintiff's inability to earn 90% of his pre-injury wages, as plaintiff did not attempt to return to work, despite his treating physician's approval of his doing so within certain restrictions."
On Pinkins' application, we granted certiorari to decide whether the lower courts erred in finding that plaintiff was neither totally and permanently disabled nor totally and temporarily disabled and that he was not entitled to supplemental earnings benefits. Pinkins v. Cardinal, 612 So.2d 43 (La.1993).

II.
We find the trial court's denial of supplemental earnings benefits clearly wrong. We further find the evidence presented on the issue of disability and inability to earn comparable wages sufficient to support an award for supplemental earnings benefits.
It is well established that the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3rd Cir.1988). Provisions of the worker's compensation law should be liberally construed in favor of the claimant. Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La.1985); Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir.1990), writ denied, 571 So.2d 652 (La.1990). The decisions of the courts below in this case do damage to the spirit, if not the letter of workers' compensation law. The purpose of S.E.Bs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Myers v. Stone Container, Inc., 556 So.2d 202 (La.App. 2d Cir.1990), writ denied, 560 So.2d 30 (La.1990); Killen v. Continental Insurance Company, 514 So.2d 711 (La.App. 2d Cir.1987).
We therefore find that, due to the totality of factors related to a realistic appraisal of access to employment, this claimant's marginal literacy, age and work related disability result in a diminution of his wage earning capacity within the meaning of LSA-R.S. 23:1221(3)(a). Our review of the record reveals that plaintiff proved by clear and convincing evidence that his work-related injury has disabled him to the extent that he is unable to earn 90% or more of the wages he received at the time of the injury. There is no evidence by the employer that Pinkins was able to perform work that was offered to him or was available to him in the employee's or the employer's community or a reasonable geographic region. Daigle v. Sherwin-Williams *56 Company, 545 So.2d 1005 (La. 1989); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App. 2d Cir.1991). The defendants offered testimony tending to show that plaintiff was capable of engaging in gainful employment as a service station cashier. However, this testimony amounts to a tempest in a teapot. We are unimpressed with the prediction of defendant's expert that plaintiff could engage in employment as a service station cashier. Our courts should look to the totality of factors related to a realistic appraisal of access to employment. Our courts do not exist in a vacuum, immune to the realities of the real world. The various standards of proof are invariably legislative and judicially imposed guidelines which govern our courts in decision making. The standard of proof enunciated by our legislature applicable in cases of this type is "clear and convincing evidence, unaided by any presumption of disability."[3]
Mr. Pinkins' straight forward testimony regarding disability growing out of this accident is uncontroverted.[4] He was not working and had not attempted to return to work since the accident and injury. Plaintiff established through his vocational rehabilitation expert, Dr. Gorman, that he is unemployable. Even though, plaintiff's physician considered the position of "cashier" as one which plaintiff could perform given his limitations and restrictions, Dr. Gorman ruled out this gainful employment as a cashier. In response to questions involving the possible employment of Mr. Pinkins as a cashier, Dr. Gorman responded negatively. The pertinent portion of the trial transcript is quoted below:
EXAMINATION BY MR. WEIGAND:
Q. Why, for instance, and specifically, would he not be able to be gainfully employed as a cashier?
A. He is marginally literate. He is not academically prepared. He is constrained to sedentary activity, which does not allow for extended standing, and he requires narcotic medication used seven days a week multiple times per day.
It is the employer's burden to establish earning capacity when the employee is not working or earning less than the employee is able to earn as the result of a job related disability. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La. 1989). The employer in this case did not meet its burden. The employer's expert, Ms. Patricia Knight, a vocational rehabilitation counselor, located several positions which fall within Mr. Pinkins' physical restrictions. These positions were crew member in a fast food establishment, cashier at a service station, security guard, and bench work position making jewelry. The plaintiff's physician ruled out all positions except the cashier at a service station based on Mr. Pinkins' physical restrictions. The employer's expert testified that the position of cashier at a service station is only available on a part time basis, twenty four hours per week at $4.25 per hour. This then is the only position for Mr. Pinkins suggested by the employer. The employer has not shown that jobs are realistically obtainable by the employee. Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259 (La.App. 5th Cir.1988), writ denied, 530 So.2d 88 (La.1988); Arriaga v. Reliance Insurance Company of Illinois, 564 So.2d 832 (La.App. 3rd Cir.1990). When considering the totality of factors related to a realistic appraisal of access to employment, the trial court erred in its failure to challenge the suggested position of gas station cashier vis a vis the practical and oftentimes harsh realities of the market place. In this regard, we are not referring to a depressed labor market.[5] We *57 refer to physical restrictions from a work related injury, complicated by factors affecting access to employment. Literacy is of course only one such factor which affects employment opportunities; race, age and the ability to perform may be other factors which affect employment opportunities. And, "illiteracy is an enduring disability"[6] in and of itself.

DECREE
For the reasons assigned, the judgment of the trial court dismissing the plaintiff's petition is reversed and the case remanded for further proceedings in keeping with the principles enunciated herein. Costs are assessed against defendant/respondents.
REVERSED AND REMANDED.
MARCUS and LEMMON, JJ., concur.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Kimball, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[2] At the time of the accident LSA-R.S. 23:1221 provided in pertinent part:

(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at the time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic area.
[3] LSA-R.S. 23:1221(1)(c), 23:1221(2)(c), 23:1221(3)(c)(ii).
[4] We have reviewed the pertinent part of the March 19, 1991 video-taped surveillance of Mr. Pinkins carrying three trash bags, and conclude that this depiction of plaintiff does not rebut plaintiff's proof, or impeach his testimony.
[5] See Babineaux v. Brown & Root, Inc., 543 So.2d 946 (La.App. 5th Cir.1989), writ not considered, 548 So.2d 1221 (La.1989), and Miller v. Great Southern Oil and Gas Co., Inc., 503 So.2d 679 (La.App. 3rd Cir.1987), writ denied, 505 So.2d 1144 (La.1987) for a discussion of the impropriety of awarding SEBs where claimant's inability to earn comparable wages is the result of a depressed labor market, as opposed to physical restrictions from the injury.
[6] Plyler v. Doe, 457 U.S. 202, 222, 102 S.Ct. 2382, 2397, 72 L.Ed.2d 786 (1982).