649 So.2d 1070 (1995)
Dorothy BORDELON, Plaintiff-Appellant,
v.
The MANAGEMENT COMPANY, INC., et al., Defendant-Appellee.
No. 94-472.
Court of Appeal of Louisiana, Third Circuit.
January 11, 1995.
*1071 Clyde Fontenot, Ville Platte, for Dorothy Bordelon.
Howard Battle Gist, III, Alexandria, for The Management Co. Inc., et al.
Patrick Bayard McIntire, Lafayette, for LIGA.
Before GUIDRY, C.J., and LABORDE and SAUNDERS, JJ.
SAUNDERS, Judge.
In this workers' compensation proceeding, the trial court found claimant-employee entitled to penalties of 12% and attorney's fees of $500.00 after finding the employer arbitrarily and capriciously failed to make claimant whole for its pro rata share of benefits following its insurer's insolvency and LIGA's subsequent inability to satisfy the defunct carrier's responsibilities.
Plaintiff maintains that she is entitled to a minimum of $50.00 per day for her employer's lapse, rather than the lesser 12% awarded, and further contends that the $500.00 awarded for attorney's fees is insufficient. Defendant on the other hand argues that the trial court erred in finding its actions arbitrary and capricious.
We affirm the finding by the trial court that defendant was arbitrary and capricious in connection with its termination of benefits; agree with plaintiff that the law clearly requires minimum penalties of $50.00 per day up to $2,000.00; and amend the award of attorney's fees, awarding additional fees for this appeal. The employer was placed on notice by both claimant and LIGA, yet failed to take the requisite steps to protect it and its employee.

FACTS
There being no dispute as to the severity or duration of plaintiff's disability, the only question before us is whether the employer is liable for penalties and attorney's fees for lapses in claimant's benefits between May 5, 1993, and September 7, 1993.
When this dispute arose, claimant had been receiving workers' compensation payment of $88.75 per week for an October 21, 1987, accident. These benefits had been paid by Rockwood Insurance Company until approximately August 26, 1991, when it became insolvent, after which its obligations were assumed by the Louisiana Insurance Guaranty Association (hereinafter LIGA).
LIGA continued to pay the statutory benefits through May 5, 1993, the date of its notices to Ms. Bordelon and her employer advising both parties that LIGA would commence prorating Ms. Bordelon's benefits due *1072 to lack of funds pursuant to LSA-R.S. 22:1382(A)(3)(a)(ii)(aa).
The May 5, 1993, letter to Ms. Bordelon set forth her weekly workers' compensation benefits and the 30% prorated amount LIGA would be paying, $26.63. The correspondence to Ms. Bordelon further indicated LIGA's understanding of Louisiana law that the responsibility for the other 70% of her benefits rested with the employer, who had been notified of the situation.
LIGA's notice to the employer, apart from setting forth the foregoing, advised that the employer might be liable for penalties and interest if it failed to make its payments on a timely basis and that the current benefits due from the employer for its 70% portion was $62.12. To ensure no interruptions, LIGA provided the employer with claimant's address.
This suit followed claimant's interruption of benefits.
Immediately after receiving its May 5 notice, the employer consulted with its claims adjusting firm, but rescinded the firm's authority to handle the claim after learning the amount of its fees.
After assuming the obligation to pay benefits to its employee, the employer failed to act. Notwithstanding notices from claimant and LIGA, by May 25, 1993, the date of plaintiff's counsel formal demand letter to the employer's representative, Ms. Bordelon had not yet been paid the 70% owed by her employer. In fact, claimant would not begin receiving even sporadic payments until two weeks later, when her employer, by correspondence dated June 7, 1993, issued its former employee a check in the amount of $434.84 "representing employer percentage from 4/18/93 through 6/6/93." When no additional payments were made by June 29, 1993, additional demand was made for the intervening three weeks followed by correspondence from the employer dated July 1, 1993. This time the employer's correspondence enclosed a check in the amount of $186.36, representing its share of workers' compensation benefits from June 7, 1993, through June 26, 1993.
Both the June 7 and July 1, 1993, letters indicated that the employer would continue to pay weekly benefits until such time as LIGA resumed 100% payment. Notwithstanding these assurances, the employer's next payment was not mailed until September 2, 1993, the date of the correspondence accompanying a check in the amount of $496.96, representing the employer's percentage from June 27 through August 21, 1993. This September 2 correspondence concluded with a note from the employer indicating its understanding that LIGA would resume 100% payment for the next pay periods.
After a hearing on the rule, the trial judge ordered defendant to pay claimant her compensation benefits, attorney's fees of $500.00, and statutory penalties of 12% on the back-due amounts dating from July 2, 1993, through September 7, 1993.
The benefits having been paid, the issues before us are whether the trial court correctly awarded plaintiff attorney's fees and penalties and, if so, whether those sums were fixed in conformity with the law.

EMPLOYER'S CONDUCT
The threshold question, raised by defendant's answer to plaintiff's appeal, is whether the employer's conduct warranted its being assessed with penalties and attorney's fees. Like the trial court, we answer affirmatively.
Whether an employer should be cast with penalties and attorney's fees for failure to make timely payment of benefits is essentially a question of fact for which the trial court's findings should not be disturbed on appeal absent manifest error. McKenzie v. City of Bossier City, 585 So.2d 1229 (La. App. 2d Cir.1991). An employer who has reasonable grounds to controvert the plaintiff's claim to workers' compensation benefits does not owe penalties and attorney's fees. Williams v. Regional Transit Authority, 546 So.2d 150, 161 (La.1989). However, while such grounds may be found to exist where there is a very real question as to whether a claimant is entitled to benefits at all, the employer or insurer who knows that the worker is entitled to benefits but is uncertain *1073 as to which between it and another is responsible, cannot avert sanctions on that basis alone.
A dispute between two insurers as to which one owes compensation benefits does not justify withholding those benefits from the injured employee. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3d Cir.1979), writ denied, 379 So.2d 1102 (La. 1980). Neither does a dispute between two employers. Shelvin v. Waste Management, Inc., 580 So.2d 1022, 1028 (La.App. 3d Cir. 1991). The same holds true for an employer that wrongly believes that LIGA should pay first. Bowens v. General Motors Corp., 608 So.2d 999, 1005 (La.1992).
The employer cannot avert responsibility for the lapses in claimant's compensation. It cannot be exonerated on the basis of its prior dissatisfaction with its claims adjusting representative, for the employer as principal is imputed with the action or inaction of its agents. LaHaye v. West Moreland Cas. Co., 509 So.2d 748 (La.App. 3d Cir.1987). At a minimum, the employer here is answerable for its own actions after deciding to handle appellant's claim itself to save expenses.
Finally, we are not convinced by the employer's alternate plea that its initial lapses were caused by LIGA's dispatching its initial notice to the nursing home where Ms. Bordelon had worked (the original site of the nursing home's administrative offices), instead of to its administrative office in Alexandria. Not only do we find no manifest error in the trial court's finding of fact, but we further observe that as a matter of law an employer cannot urge in its defense its own poor clerical work or administrative lapses, including those arising in the context of an office move, to escape penalties for non-payment. Harrison v. Louisiana State Un. Med. Ctr., 623 So.2d 707, 709 (La.App. 4th Cir.1993) and cites therein.
In light of the foregoing, we see no basis for reversing the trial court's conclusion that the employer's conduct warranted sanctions. The employer presented no evidence to show that it informed LIGA that it had chosen to consolidate its administrative offices elsewhere and, in any event, can assert no grounds to defend its repeated failures to timely pay benefits after that time.

PENALTIES
Plaintiff maintains that defendant's inaction warrants penalties of $2,000.00. The trial judge awarded only 12% on the overdue amounts from July 2, 1993, through September 7, 1993, which amounts to less than $50.00 per day.
LSA-R.S. 23:1201(E) was amended effective January 1, 1993, to provide that, in cases where compensation payable without an order of the court is not paid timely, "there shall be added to such unpaid compensation a penalty of an amount equal to 12% thereof or a total penalty of not more than $50.00 per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater...." In cases where the $50.00 per diem award is mandated, LSA-R.S. 23:1201(E) caps the penalty at $2,000.00.
The law under the circumstances clearly requires that penalties against defendant be assessed at $50.00 per day, and the trial court erred in awarding less. Accordingly, we amend the penalty assessed to defendant for the period of July 2, 1993, through September 7, 1993, to $2,000.00.

ATTORNEY'S FEES
Plaintiff is clearly entitled to attorney's fees related to the controversy with her employer following LIGA's reduction of benefits. The employer acted arbitrarily and capriciously and the record reveals that plaintiff's counsel steadfastly pursued his client's claim by making repeated contacts with both the employer and LIGA before filing the current rule to show cause, prepared for and participated in the hearing on the rule, and submitted the Judgment in his client's favor.
Nonetheless, the question presented for review is not whether plaintiff is entitled to attorney's fees, but whether the sums awarded for those attorney's fees were unreasonable.
*1074 The general rule that an appellate court will not disturb an award by the trial court unless the trier of fact abuses its much discretion, Reck v. Stevens, 373 So.2d 498 (La.1979), extends to awards of attorney's fees. Buteau v. Leleux, 591 So.2d 1261, 1266 (La.App. 3d Cir.1991). This is because no one is in a better position to fix those fees than the trial judge. Hillard v. Hillard, 225 La. 507, 73 So.2d 442, 443 (1954).
For her attorney's efforts, plaintiff was awarded $500.00 attorney's fees, which appears to be unreasonably low. Plaintiff's counsel presented no time sheets to indicate the number of hours spent in preparing her case below, but it is clear that considerable efforts were spent by him over a several month period tracking his client's case and vigorously enforcing her rights. Additionally, plaintiff is entitled to additional attorney's fees in connection with her excellent brief filed on appeal in support of her case and in opposition to defendants' answer to appeal. Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3d Cir.1989). For his efforts in the court below and on appeal, we believe a total attorney's fee award of $4,000.00 is justified.

DECREE
For the foregoing reasons, the judgment of the trial court finding the employer acted arbitrarily and capriciously is affirmed, its statutory penalties award is amended to $2,000.00, plus attorney's fees of $4,000.00 for legal services required at the trial and appellate levels. Interest to run from date of judicial demand, less a credit for sums previously tendered. Costs at the trial level and on appeal to be paid by defendant.
AFFIRMED AS AMENDED AND RENDERED.