JiGREMILLION, Judge.
In this workers’ compensation case, the defendant, Northland Frozen Foods, Inc., appeals the decision of the hearing officer awarding the plaintiff, Shane Brady, supplemental earnings benefits and benefits for permanent and serious disfigurement. The hearing officer also awarded Brady penalties and attorney’s fees as a result of Northland’s premature termination of his benefits and its failure to reinstate them. After reviewing the record, we affirm the hearing officer’s *1141 decision in its entirety and increase the award of attorney’s fees for Brady’s successful defense of this appeal.
FACTS
Brady, a laborer for Northland, was injured on November 30, 1993, when his glove became caught on a conveyor belt, pulling his right arm into the conveyor and causing him serious injury. Brady was taken to St. Francis Cabrini Hospital in Alexandria, where he was treated by Dr. W. Stanley Foster, an orthopedic surgeon, for second to third degree abrasions and/or burns over the entire anterior aspect of his arm, |2 forearm, and hand, and a 20 to 25 centimeter tearing laceration to the axilla, or armpit. The laceration was repaired by surgery and the abrasions and burns were irrigated and debrided. Brady remained in the hospital until December 4, 1993. Fourteen days after his accident, Northland commenced the payment of workers’ compensation benefits to Brady in the amount of $85.00 per week.
Dr. John McCabe, a specialist in plastic and reconstructive surgery, performed a skin graft on Brady’s arm on December 14, 1993, removing donor skin from his right lateral thigh and placing it over the injured area of his shoulder and arm. Following this procedure, there were several areas where the skin graft failed to take, resulting in cracks in the antecubital fossa (bend of the elbow) and along his volar forearm (located on the same side as the palm of the hand). Brady also developed a hypertrophic scar, which resulted in a limited range of motion in his arm. In a May 6, 1994 letter to Gretehen Montero, a vocational rehabilitation counsel- or, Dr. McCabe recommended that Brady should not work in outside areas which would result in high heat exposure and that he perform no duties requiring friction or heavy lifting, as these would put pressure on his volar right forearm.
On November 9, 1994, Dr. McCabe was presented with a job description for a position with Northland. The job title was “production line worker” and involved packaging the product manually and performing a combination of duties: labeling containers and sorting them on the conveyor belt before they passed through the overwrap machine, Dr. McCabe approved this position for Brady.
Brady returned to Northland on November 14, 1994, and was initially told by David Bailey, a supervisor, that his duties would entail labeling boxes of vegetables on the conveyor belt. Instead, since Brady was wearing a jobst stocking over his injured arm, Bailey had him straightening boxes on the conveyor belt. After a while, however, the conveyor belt backed up and Brady was required to unload the boxes Igfrom the conveyor belt and place them on a table located behind him. The twisting and throwing motion required by this activity caused the scar in the bend of Brady’s elbow to open up and bleed. After working 1½ to 2 hours, Brady told Jana Klock, Northland’s secretary, about his arm and she instructed him to go home. Brady made another appointment to see Dr. McCabe, who recommended another skin graft to correct the hypertrophic scar in the anteeubital fossa. This surgery was performed on January 31,1995.
On November 13, 1994, Northland terminated Brady’s benefits because he was to return to work the next day earning his pre-injury wages. On November 30,1994, Brady filed a disputed claim for compensation, alleging the wrongful termination of workers’ compensation benefits, and seeking penalties and attorney’s fees. On December 15, 1994, after learning that Brady was going to have surgery on his arm, Northland reinstated Brady’s benefits and brought his past due benefits up to date. Following the January 31, 1994 skin graft, Dr. McCabe was again given the same job description with North-land, which he approved on March 24, 1995. Although Brady was to report to work in April 1995, he failed to do so. His reasons being fear of reinjuring his arm and because the work at Northland was not steady. On April 27, 1995, the claims adjustor handling Brady’s file terminated his compensation benefits due to his failure to report for the position. These benefits were never reinstated despite the fact that on June 30, 1995, Northland closed without any warning in order for the corporation to restructure.
*1142 A hearing was held on Brady’s claim on August 30, 1995, at which the parties stipulated that Brady was injured during the course and scope of his employment on November 30, 1993, that Northland paid temporary total disability benefits through November 13, 1994, that the benefits were reinstated on December 13, 1994, retroactive to November 13, and that they were finally terminated on April L27, 1995.
After considering the evidence, the hearing officer rendered a decision ordering North-land to pay supplemental earnings benefits to Brady based on a postaccident ability to earn wages of zero, effective July 1, 1995, and continuing until true rehabilitation was provided which located a job within his ability to perform. The hearing officer further awarded Brady benefits for serious and permanent disfigurement in an amount equal to 66⅜% of his wages for 100 weeks. Finally, the hearing officer awarded Brady statutory penalties of 12% on all amounts awarded, plus attorney’s fees of $5,000.00.
ISSUES
On appeal, Northland urges three assign-, ments of error: (1) the hearing officer was clearly wrong in not allowing it to introduce the deposition testimony of its vocational rehabilitation counselor; (2) the hearing officer committed manifest error in awarding penalties and attorney’s fees to Brady; and (3) the hearing officer incorrectly added the issue of disfigurement to the issues properly before her.
Brady answered Northland’s appeal, by asking this court to increase the amount awarded as attorney’s fees as a result of additional time spent defending this appeal.
DEPOSITION TESTIMONY
In its first assignment of error, Northland asserts that the hearing officer was clearly wrong in excluding the deposition testimony of its vocational rehabilitation counselor, Susan Manuel. The hearing officer determined that Manuel was not a licensed vocational rehabilitation counselor and excluded her deposition testimony, except for the purpose of deciding the penalties and attorney’s fee claim.
In James v. State Through DHHR, 572 So.2d 701, 703 (La.App. 4 Cir.1990), writ denied, 575 So.2d 395 (La.1991), the court stated:
IgThe trier of fact has vast discretion in assessing the credibility of witnesses. Disability under the Louisiana Worker’s Compensation Act is a legal rather than purely medical determination. A trier of fact may reject the opinion of a medical expert depending upon the impression that the expert’s qualifications, credibility, and testimony make. Green v. Cement Products Services, 526 So.2d 493, 497 (La.App. 1st Cir.1988).
La.R.S. 37:3447 lists the requirements for a licensed professional counselor:
[[Image here]]
(5) Has received a master’s degree in rehabilitation counseling or related field and two years experience under the supervision of a licensed vocational rehabilitation counselor or a bachelor’s degree in vocational rehabilitation or related field and five years work experience, working under the supervision of a licensed vocational rehabilitation counselor.
La.R.S. 37:3450(A) provides that:
No person shall assume or use the title or designation “licensed professional vocational rehabilitation counselor” unless he has in his possession a valid license issued by the board under the authority of this Chapter.
La.R.S. 37:3452 provides that certain persons and their activities are exempted from the licensing requirements of this chapter:
(3) Any person employed or supervised by a licensed professional rehabilitation counselor, while carrying out specific tasks under the licensee’s supervision. The supervisee shall not represent himself to the public as a licensed professional rehabilitation counselor.
In her deposition, Manuel testified that with regards to her qualifications, she was licensed as a rehabilitation counselor, and that January was the end of her supervised time for licensure. She stated that she had *1143 8½ years experience in rehabilitation work, however, she had never testified in court or given a deposition in a rehabilitation case, although she had testified in social security cases. She also was unsure of whether she was on the list of approved vocational consultants for the Office of Workers’ Compensation. As a result of this testimony and after determining that a person working under the supervision of a licensed professional vocational rehabilitation counselor does not possess a valid license, the hearing officer excluded Manuel’s testimony.
| f,Given the hearing officer’s vast discretion in assessing the credibility of witnesses, we cannot say that she abused her much discretion in excluding the testimony of Manuel, based on the fact that she was not a licensed vocational .rehabilitation counselor. For this reason, we find this assignment of error is without merit and the hearing officer’s ruling is affirmed.
PENALTIES AND ATTORNEY’S FEES
An employee may receive penalties and attorney’s fees under the Workers’ Compensation Act if an employer is untimely in its payment of benefits and its actions are found to be arbitrary, capricious, and without cause. La.R.S. 23:1201(F), La.R.S. 23:1201.2. The issue of whether an employer should be cast with penalties and attorney’s fees is a question of fact, which should not be disturbed on appeal, unless the findings of the hearing officer are manifestly erroneous or clearly wrong. Bordelon v. Management Co., 94—472 (La.App. 3 Cir. 1/11/95), 649 So.2d 1070, writ denied, 95-346 (La. 4/7/95), 652 So.2d 1346. The hearing officer has great discretion in awarding attorney’s fees. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir.1993).
The hearing officer held that Northland’s claims adjustor, Yalanda Ray, an employee of Louisiana Workers’ Compensation Corporation, was arbitrary and capricious in terminating Brady’s compensation benefits on November 13, 1994. At that time, Brady was unable to continue his duties as a result of his disability, a fact which was known to Northland. Ray testified that Brady’s benefits were terminated on November 13, 1994, because a job had been provided for him at Northland, which Dr. McCabe had approved, and for which he would earn his pre-accident wages. Ray stated that she was unaware for several weeks that Brady had to leave this position on November 13,1994, the same day he returned. When asked why Brady’s benefits were not reinstated, Ray replied that she never received a letter from Dr. McCabe ^stating that Brady was restricted from performing the position approved for him. It was her understanding that she needed such a letter before she could reactivate his benefits. Ray further testified that she received a December 7, 1994 letter from Dr. McCabe, which stated that he intended to excise Brady’s hypertrophic scar and do further skin grafting on his arm. However, Ray said the letter was unclear with regards to Brady’s work status. She testified that she would only feel justified in reinstating his benefits if she received a letter from Dr. McCabe clearly stating that Brady was removed from all work activities. Despite her confusion on • this issue, Ray made no attempts at discovering this information for herself.
Based on those assertions, the hearing officer held that Ray failed to properly investigate the claim. The hearing officer found this to be unreasonable since Northland already had knowledge of Brady’s disability. The hearing officer further found that the benefits were reinstated by Ray, without the benefit of the requested letter, upon Brady’s filing of a claim with the Office of Workers’ Compensation. Ray received the first notice of mediation from the Office of Workers’ Compensation on December 13, 1994 and a cheek reinstating his benefits was issued to Brady on December 15,1994. Ray, however, claims she reinstated the benefits when she became aware that Brady was to undergo surgery sometime in December, 1994.
After reviewing this testimony, we do not find that the hearing officer was clearly wrong in finding Northland’s failure to timely reinstate Brady’s compensation benefits to be arbitrary and capricious. Although Ray felt that she needed more information from Dr. McCabe, she took no action to gather further information which was in the possession of Northland and could have been easily *1144 discovered through a minimal of effort. Ray testified that she reinstated Brady's benefits on December 15, 1994, because she learned that he was having surgery and she wanted to give him the benefit of the doubt. However, she already knew this from Dr. McCabe’s letter of IgDecember 8,1994. It was not until she received the first notice of mediation on December 13,1994, that Ray finally reinstated the benefits. It is obvious that the knowledge of Brady’s workers’ compensation claim was the compelling reason behind Ray’s reinstatement of benefits.
Finally, we find the hearing officer would have been correct in holding that Northland was unreasonable for failing to pay benefits to Brady due to his obvious serious and permanent disfigurement, an issue we will discuss next The hearing officer awarded Brady attorney’s fees in the amount of $5,000.00. In Naquin v. Uniroyal Inc., 405 So.2d 525 (La.1981), the supreme court stated that the factors to be considered in determining the amount of attorney’s fees are the degree of skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the amount of time devoted to the case. In this case, counsel for Brady filed a disputed claim for compensation with the Office of Workers’ Compensation, and filed a detailed pre-trial statement, as well as three amendments to the pre-trial statement. He prepared for and participated in the deposition of Dr. John McCabe, took the deposition of Susan Manuel, and attended ' the deposition of Brady. Counsel prepared for a hearing before the hearing officer, which consisted of the testimony of five witnesses. Brady was successful in his claim and was awarded supplemental earnings benefits and benefits for serious and permanent disfigurement in an amount equal to 66⅜% of his wages for 100 weeks. Considering all of this, we cannot say that the hearing officer was clearly wrong in awarding attorney’s fees in the amount of $5,000.00.
For the reasons set forth above, we hold that the hearing officer did not err in awarding penalties and attorney’s fees. This assignment of error is without merit.
I sDISFIGUREMENT
Northland’s final assignment of error alleges that the hearing officer was clearly wrong in awarding benefits for disfigurement since this issue was never raised by Brady. Northland argues that, according to the Hearing Officer Rules, only those issues raised in the pretrial statements are to be litigated at trial and that no new issues shall be raised except by order of the hearing officer for good cause shown. Northland alleges that Brady failed to present any evidence of disfigurement in his pretrial statement nor did he allege it in his disputed claim for compensation. Finally, Northland argues that the hearing officer added the issue without allowing it a chance to argue against the issue, thus, no good cause was shown for the addition of the issue of disfigurement.
Article 1154 of the Louisiana Code of Civil Procedure states:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
See Herrell v. Herrell, 594 So.2d 943 (La.App. 3 Cir.1992) and Martinez v. Dixie Brewing Co., Inc., 463 So.2d 628 (La.App. 4 Cir.1984), writ denied, 467 So.2d 537 (La.1985).
In her reasons for judgment, the hearing officer stated that since there was no dispute *1145 with regard to the issue of disfigurement, Brady was entitled to benefits in an amount equal to 100 weeks of compensation benefits. At the beginning of the liphearing, Brady’s counsel informed the hearing officer that his claim for disability included a claim for disfigurement. At that point, no objection was made by Northland. When questioned by Brady, Ray testified that she was familiar with the provisions concerning disfigurement and stated that he should be paid 100 weeks of benefits as a result of his disfigurement. Northland also questioned Ray concerning Brady’s disfigurement, inquiring if she knew whether the scar on his arm was permanent or could be improved with surgery. Ray was unsure about the permanence of the scar, but she stated that if it could be improved then she would look into providing the necessary medical benefits. Dr. McCabe was also questioned about the permanence of the scarring on Brady’s arm. No objection was made by Northland, who in turn questioned Dr. McCabe about the condition of Brady’s arm and the possibility of surgery improving its appearance. Dr. McCabe described a time consuming and expensive procedure which, through the use of skin expanders, would improve the appearance of Brady’s arm, but would still leave extensive scarring.
It is obvious from the record that the issue of disfigurement was properly considered by the hearing officer. Even if the issue was not raised in Brady’s claim for compensation, it was raised at the beginning of the hearing by Brady, with the implied consent of North-land, who failed to object and even questioned the witnesses with regards to the issue. Further, Northland could not have been surprised by the claim, since it was very obvious from the photographs introduced into evidence that Brady suffered a serious injury to his right arm, from his shoulder to his wrist. Thus, the pleadings were amended to include the issue of disfigurement in order to conform to the evidence presented at the hearing. La.Code Civ.P. art. 1154. Northland’s assignment of error is without merit and the decision of the hearing officer is affirmed.
ANSWER TO APPEAL
[g] jn ⅛⅛ answer to the appeal, Brady this court to award him additional 111attomey’s fees for the effort required by his counsel in defending this appeal. “A worker’s compensation claimant is entitled to increased attorney’s fees to reflect additional time incurred in defending employer/carrier’s unsuccessful appeal.” Hickman v. Allstate Timber Co., 94-1275, p. 7 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, 158, writ denied, 95-1133 (La. 6/23/95), 656 So.2d 1017. Thus, we amend the decision of the hearing officer to award Brady an additional $2,500.00 for attorney’s fees for the time spent successfully defending this appeal.
CONCLUSION
For the above stated reasons, the decision of the hearing officer is affirmed. The award of attorney’s fees is amended to award the plaintiff, Shane Brady, an additional $2,500.00 for attorney’s fees on appeal. The costs of this matter are assessed against the defendant, Northland Frozen Foods, Inc.
AFFIRMED AS AMENDED.